**FIRST WYOMING BANK, N.A., JACK-SON HOLE, a Wyoming banking association; and First Wyoming Bancorporation, a Wyoming corporation, Appellants (Defendants),**

v.

**CONTINENTAL INSURANCE COMPANY, a foreign corporation, Appellee (Plaintiff).**

No. 90–258.

Supreme Court of Wyoming.

Jan. 19, 1993.

William M. McKellar of Boley & McKellar, P.C., Cheyenne, for appellants.

Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, for appellee.

Before MACY, C.J., THOMAS and CARDINE, JJ., and URBIGKIT * and BROWN, JJ. (Retired).

URBIGKIT, Justice, Retired.

This appeal presents a wide array of liability policy coverage questions arising when the insured banking institution was sued, tendered defense to its liability carrier with negative results, settled with the third-party claimant on its lender liability litigation, and now defends insurer's declaratory judgment coverage escape litigation. The appeal comes on summary judgment granted to the liability carrier on issues of policy coverage. This is the third time the litigation has been before this court and we reverse the dispositive summary judgment and remand the case to the district court.

After the borrower versus the bank litigation had been settled, which appellee Continental Insurance Company (Continental) had declined to defend under its comprehensive general insurance coverage, the insurer filed a state court declaratory judgment action to determine whether the insurance policy coverages written for the First Wyoming Bank, N.A., Jackson Hole (First Wyoming Bank) and its parent bank holding corporation provided for either the duty to defend or any indemnity obligation.

The case first appeared in this court in *Continental Ins. Co. v. Ranck, Judge of the District Court, Teton County, Wyoming*, No. 88–32 (February 24, 1988), where we reversed an order dismissing plaintiff's complaint and remanded for consideration of the question of privilege for documents requested in discovery production motions. The case returned to this court by a further peremptory writ in *Continental Ins. Co. v. First Wyoming Bank, N.A.*, 771 P.2d 374 (Wyo.1989), which resulted in another remand to require a further hearing on the same issues.

After district court reassignment pursuant to this court's decision in *Continental*

---

* Chief Justice at time of oral argument; retired 1/1/93.

*Ins. Co.*, 771 P.2d 374, another district court judge considered the case and granted a motion for summary judgment in favor of the insurer in all regards without deciding the issues for which the remand had been granted. The summary judgment order effectively terminated the litigation. In essence, the district court decided that, as a matter of law, the original lender liability lawsuits against the bank were not covered by the comprehensive liability policy for either defense or indemnity and, consequently, neither privilege of adjuster files nor bad faith counterclaim issues needed to be addressed.[1]

We reverse and remand.

## I. ISSUES PRESENTED

Recognizing that this appeal considers coverage questions under a comprehensive liability insurance policy after First Wyoming Bank had been subjected to two parallel suits by dissatisfied borrowers, complicated statements of appellate issues are now provided. Furthermore, sub-issues of the more broadly stated general issues are also raised in the extended briefing which is presented. Appellants, First Wyoming Bank and First Wyoming Bancorporation, question in detail:

I. Whether the trial court erred in granting summary judgment in favor of Continental by concluding the following:

1) That the allegations in the Robinson and Russell complaints did not allege bodily injury as defined by the terms of the insurance policy. * * *

2) That the allegations of emotional injury, economic injury, personal distress, and injury to their business reputations as alleged by Robinson and Russell in their complaints do not constitute bodily injury. * * *

3) That the complaints of Robinson and Russell did not allege property damage as defined by the policy. * * *

4) That the complaints of Robinson and Russell did not allege loss of use of tangible property caused by an occurrence. * * *

5) That the coverage provided by Continental did not extend to the bank's alleged breach of contract. * * *

6) That the phrase "legally obligated to pay as damages because of bodily injury or property damage" refers to liability imposed by law for torts and not to damages for breach of contract, except contracts for indemnity. * * *

7) That the complaints filed by both Robinson and Russell were in contract and not negligence, although the lawsuits included a one-sentence claim for negligence. Where complaints sound in contract and not negligence, the mere use of the word negligence alone cannot turn the complaint into a cause of action for negligence. * * *

Appellants also define their argument sequentially:

■ Rules of Construction & Interpretation

■ Insurance Coverage Issue

[a] Bodily Injury

[b] Property Damage

[c] Occurrence

[d] Contractual Liability Coverage

■ Doctrine of Reasonable Expectations

■ Duty to Defend

■ Application to Facts

[a] Allegation of Negligence

[b] Allegations of Bodily Injury and Property Damage

[c] Allegations Regarding Breach of Contract

Appellee, Continental, compresses the issues in initial statement:

1. Did the District Court correctly conclude that Continental Insurance Company did not provide coverage to its insured, First Wyoming Bank, for the acts and omissions alleged by the Robinsons and the Russells in their federal court lawsuits?

---

1. The two district court judges have either retired or resigned from the Wyoming judiciary and all original attorneys in the initial litigation have changed. A voluminous, complex and confused record of nine volumes has been created.

2. Did the District Court correctly conclude that Continental Insurance Company had no duty to defend its insured, First Wyoming Bank, in the federal court lawsuits filed by the Robinsons and Russells?

3. Did the District Court correctly conclude that First Wyoming Bank has no viable claim for bad faith where Continental Insurance Company provided no applicable insurance to the Bank, where Continental had no duty to defend the Bank in the *Robinson* and *Russell* cases, and where Continental did not breach its insurance contract with the Bank?

Appellee then restates in its Table of Contents:

■ Argument—No Coverage
[a] The Rules of Construction
[b] There is No "Bodily Injury"
[c] There is No "Property Damage"
[d] There is No "Occurrence." There is No Coverage for Fraud or Breach of Contract
[e] There is No Contractual Liability Coverage Because the Bank Never Assumed Any Liability
[f] There is No Duty to Indemnify Because There was No Loss
[g] The Court Should Not Adopt or Apply The Doctrine of Reasonable Expectations to Create Coverage Where None Exists
[h] Continental is Not Estopped From Denying Coverage
■ Argument—No Duty to Defend
[a] There is No Duty to Defend Claims Which Are Not Covered by the Policy
[b] There Was No Allegation or Proof of an "Occurrence"
[c] If There is a Duty to Defend, it Does Not Extend to the Bank's Counterclaims or to the Robinson/Russell Allegations of Intentional Acts
■ Argument—No Bad Faith

The dispositive finding and conclusion of the district court, which defined the basis for denial of coverage in summary judgment decision, stated:

6. An insurance policy is a contract and is subject to the general rules of contract interpretation and construction. If the policy language is clear and unambiguous, the rule of strict construction against an insured does not apply and the policy must be interpreted in accordance with the ordinary and usual meaning of its terms. * * *

7. The allegations in the Robinson and Russell complaints did not allege bodily injury as defined by the terms of the insurance policy.

8. The allegations of emotional injury, economic injury, personal distress, and injury to their business reputations as alleged by Robinson and Russell in their complaint do not constitute bodily injury. * * *

9. The complaints of Robinson and Russell did not allege property damage as defined by the insurance policy.

10. The complaints of Robinson and Russell did not allege loss of use of tangible property caused by an occurrence. Although Robinson and Russell alleged various economic injuries and damages as a result of the banks' alleged breach of contract those alleged damages were not property damage as defined by the insurance contract.

11. The coverage provided by plaintiff did not extend to the bank's alleged breach of contract. * * *

12. The phrase "legally obligated to pay as damages because of bodily injury or property damage" refers to liability imposed by law for torts and not to damages for breach of contract, except contracts for indemnity. * * *

13. The complaints filed by both Robinson and Russell were in contract and not negligence, although the lawsuits included a one sentence claim for negligence. Where a complaint[ ] sounds in contract and not negligence, the mere use of the word negligence alone cannot turn the complaint into a cause of action for negligence.

Based on the above findings, the district court concluded:

1. There are no material factual disputes.

2. The lawsuits filed by Robinson and Russell against the First Wyoming Bank of Jackson Hole did not involve allegations of bodily injury or property damage.

3. There is no insurance coverage for the intentional actions of fraud or breach of contract.

The partial summary judgment was granted on August 20, 1990 and followed by a general order granting summary judgment against appellants and in favor of appellee on all issues raised by both the complaint and the insured's comprehensive counterclaim alleging insurer bad faith. The summary judgment decisions provide the final order. The issues are: duty to defend, obligation of indemnity insurance coverage, and bad-faith insurer misconduct. In addition, we cannot totally ignore documents provided *in camera* to the district court about which privilege against discovery was claimed for which a court decision was never made and to which access by the insured for inspection was never granted (or denied) following our earlier remands for that purpose.

## II. FACTS

Essentially, the history of this case is provided sequentially in three chapters. The first chapter involved a borrowing/lending relationship between the First Wyoming Bank and two families, Lewis S. and Linda T. Robinson and Robert A. and Susan H. Russell. This course of borrowing/lending business with First Wyoming Bank started at some earlier date alleged to be about 1978 and continued until 1986 when the bank was sued in the United States District Court for the District of Wyoming separately by each family. In factual retrospect, the borrowers had been unable to meet their very substantial loan payment requirements on time and, consequently, sued the lender.

The second chapter commences with these two typical lender liability lawsuits claiming recovery in both contract and tort. First Wyoming Bank tendered a defense and requested indemnity of Continental as its general liability insurance carrier. The record in its present summary judgment status, extended in part and incomplete in other regards, reveals that the insurance carrier, through an out-of-state adjusting service, and an Idaho law firm "monitored" the proceedings, but refused to undertake either a defense or to agree about a responsibility for indemnity. After a very active course of litigation in the federal court, counsel for First Wyoming Bank settled the litigation with the dissatisfied borrowers. The settlement involved a write down of loan balances due from the borrowers to First Wyoming Bank in the range of $700,-000 to an agreed entered judgment of $175,000. With entry of that federal court judgment on December 3, 1987, the second chapter came to an end except for references that are found that the borrowers then failed to pay the judgment on an agreed basis and foreclosure of collateral had to be pursued by the lender.

The primary issue resulting from this second chapter is the insured's cost of defense, including accrued attorney's fees, claimed to total approximately $150,000. This claim invoked the duty to defend controversy that remains in the center stage for this appeal. The additional claim involves the write down of balances due to the settlement figure of $175,000 from approximately $700,000 providing a net total loss for which the indemnity claim is presented of approximately $525,000.

Chapter three in the litigation history was initiated with Continental's filing of this lawsuit against its insured, First Wyoming Bank, and the bank holding company, First Wyoming Bancorporation, in state court. Including a requested jury trial, the complaint requested adjudication that no coverage existed for either a duty to defend or indemnity under the insurance policy which Continental had issued to First Wyoming Bank. Sequentially, the present proceeding was filed before settlement had actually been finalized in the federal court proceeding. However, the insured answered the complaint with detailed defenses and asserted a counterclaim which al-

leged compensable bad faith and asked for both actual and punitive damages including litigation costs in the *Robinson/Russell* proceeding in federal court. Since the counterclaim was filed before the federal court settlement was accomplished, no direct demand for repayment was initially included in the pleadings.

The general claim created in the second chapter—lender liability litigation—set the parameters for consideration of the liability policy coverage denial in the present lawsuit. In extended pleadings, the borrowers had alleged a long term borrowing and fiduciary relationship. They further contended that during 1983, First Wyoming Bank promised and represented that they would fund the cost of a lawsuit in Montana, also a lender liability lawsuit. First Wyoming Bank's failure to fund resulted in the borrowers having to resort, in that litigation, to a contingent fee agreement basis with Montana counsel. In 1984, the borrowers alleged that First Wyoming Bank agreed to loan eighty percent of a note in the face amount of $1,200,000, including funds sufficient to pay all federal income tax delinquencies that were due and owing for borrower's 1984 tax year and that First Wyoming Bank would refinance obligations due from the borrowers to First Wyoming Bank, including an existent mortgage on a residence in Montana. A RICO Act violation was additionally alleged. 18 U.S.C. § 1961. The total claim for damage was in the amount of two million dollars for compensatory recovery and five million dollars for punitive damages.

Stated claims for relief in the amended complaint, by captioned items, included: fraud, breach of contract, breach of fiduciary duty, RICO, and negligence. "The defendants acted in a negligent and careless fashion in making the representations set forth above and in carrying on the banking relationship with the plaintiffs as described herein." The complaint of negligence in the litigation between borrower and lender remained an active issue to be found, by reference, in variant pleadings and submissions, in at least twenty places. In resistance to a motion to dismiss or for summary judgment, the borrowers stated in a comprehensive memorandum filed in federal court:

Defendants final argument relates to the negligence claim of the Plaintiffs. As in their other aspects of this motion, Defendants have limited this motion to the Pleadings since no references to any facts in the record are offered by the Defendants to support their contentions. Defendants first contention relating to this claim is that the Plaintiffs have failed to allege the existence of a duty. The strongest thrust of the defendants' arguments is their contention that they owed no duty to the Plaintiffs' attorneys in the Montana litigation. This contention demonstrates that there is confusion as to the duty which is at issue. Plaintiffs contend that the duty which needs to be established is that duty which the Defendants owed to the Plaintiffs themselves, not the Plaintiffs' attorneys. The Defendants do not and cannot dispute the fact that they owed a duty to the Plaintiffs, not to negligently cause injury or damage to them. Defendants would like to separate the Plaintiffs['] attorneys from the Plaintiffs and classify each as an entirely separate entity. This argument loses some of its impact when it is realized that the Plaintiffs['] attorneys were merely the agents of the Plaintiffs who had a right not to have the Bank negligently (or intentionally) mislead them.

The discussion of the negligence issue then continued for approximately three more pages.

On April 29, 1987, which was nine days before the state court declaratory judgment was filed, Judge Alan B. Johnson, in one of the two federal court proceedings, granted summary judgment against plaintiff and in favor of defendants on the claim of negligence. That claim had been actively involved and assiduously pursued for more than a year prior to disposition by summary judgment. Contested contract issues had not been included in the summary judgment motion. The federal judge denied summary judgment on fraud on the

basis of the existence of factual issues and granted summary judgment on all other tort claims in the *Robinson* litigation. On the day after the summary judgment was entered, the settlement agreement was achieved which ultimately resulted in judgment in favor of First Wyoming Bank and against the borrowers and resolved both lawsuits.

*To the stage that this case has progressed in litigation, there are no factual issues presented for this appeal.*

### III. GENERAL DISCUSSION

Two broad elements of insurance policy coverage are actually presented when we consider the complex allegations in the underlying lender liability federal court litigation. The first element is the contractual aspects, breach of a line-of-credit agreement, oral contract to make loans, etc. The second is tort, which included, generally, fraud, RICO, and negligence.

The technical contractual aspects at issue involved the insurance policy provisions, designated in the policy as contractual liability coverage, and generally characterized by the literature as assumed liability insurance. We will first address that issue and, in agreement with the district court, determine that the lender liability litigation created no policy exposure to its assumed liability coverages for either indemnity or duty to defend. Furthermore, it was not seriously argued by First Wyoming Bank that the tort allegations of fraud and RICO provided either a valid duty to defend or indemnity insurance claims. We are left with the substantive issue of this appeal which involves the lender liability negligence claim which the district court dismissed, almost out-of-hand, as insubstantial in the grant to the insurer of summary judgment. We disagree and reverse.

As we shall explain, there really is no residual indemnity issue remaining in this litigation and the dispositive question is: what duty, if any, does Continental, as the insurer, owe for payment of part or all of the incurred litigation expenses in the federal court, totaling in the general range of approximately $150,000? Bad faith, in neglected exercise of a duty to defend, is thus far inconclusively presented in the counterclaim allegations summarily denied without substantive district court consideration.

A complex and divisive issue exists within this appeal resulting from denied discovery—a contest of claimed privileged communications addressing documentation of the insurance company's adjustment service which analyzed whether insurance coverage did exist of sufficient substance to create a duty to defend. That ancillary concern comes with the central issue of assessing insurer responsibility for federal court defense cost expenditures incurred by its insured when the insurer failed, neglected, or deferred decision on its own responsibility to defend. Procedurally, the privilege issue becomes most troubling since this court had specifically directed, by remand order, that a decision be made by the district court on that specific issue and, contrarily, the district court avoided decision by granting summary judgment without resolving the discovery issues which could be arguably related to both coverage and bad faith.

### IV. CONTRACTUAL LIABILITY COVERAGE: THE ASSUMED LIABILITY INSURANCE ISSUES

The order of partial summary judgment, granted by the United States District Court for the District of Wyoming on April 29, 1987, stated in part:

This is an action for damages for alleged breach of contract, fraud, breach of fiduciary duty, and negligence, as well as for alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. * * * Defendants seek dismissal of or, in the alternative, summary judgment on plaintiffs' claims of fraud, breach of fiduciary duty, negligence, and violations of RICO. Defendants do not challenge plaintiffs' breach of contract claim. The success of plaintiffs' cause of action for fraud depends on whether defendants agreed to finance plaintiffs' activities and, if so, whether defendants entered

the commitment with an intention not to perform. These factual questions preclude granting summary judgment. The Court concludes, however, that no material factual dispute exists concerning the negligence, breach of fiduciary duty and RICO claims and that defendants are entitled to judgment as a matter of law. Partial summary judgment consequently will be granted to defendants.

Summary judgment was granted by the United States District Court on negligence, breach of fiduciary duty, and RICO leaving litigable issues which were then settled by litigant stipulation of breach of contract and fraud. To consider assumed liability issues, we only address those remaining for which settlement was made—breach of contract and fraud. The summary judgment absolved indemnity exposure for claims on which it was granted; without liability there could be no indemnity. Furthermore, fraud was not an insured risk. Examining in detail the issue of the insurance policy leads us to the conclusion that indemnity liability can exist, if it does, only on the contractual assumption clause included in the assumed liability exclusion and additive endorsement, which states:

### Exclusions

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement except an *incidental contract* * * *.

\* \* \* \* \* \*

### BROAD FORM COMPREHENSIVE GENERAL LIABILITY ENDORSEMENT

This endorsement modifies such insurance as is afforded by the provisions of Part VI of the policy relating to the following:

**Comprehensive General Liability Insurance**

\* \* \* \* \* \*

### I. CONTRACTUAL LIABILITY COVERAGE

(A) The definition of *incidental contract* is extended to include any oral or written contract or agreement relating to the conduct of the *named insured's* business.

(Emphasis in original.)

Continental admitted in its appellate brief that the definition of "incidental contract" was broadened by this endorsement. The arguments that were developed compared the carrier's contention that the coverage was a third party assumed liability provision while First Wyoming Bank responded that the endorsement could create coverage for breach of contract.

▮▮▮▮ As unclear as this composite record may be, we are presented the simple issue for indemnity of assumed liability coverage about which there is a considerable body of case law. Although these provisions are stated in policy terminology in various ways, of which this policy is not the clearest, we determine, first, that this is an assumed liability clause [2] and not a direct obligation indemnity provision. The difference is defined in the cases to contrast between the assumed liability clause which obligates the insured to hold harmless a third party and the direct party liability coverage which insures against claims founded on some breach of the insured's direct contractual obligation. In the first concept, payment is to perform a contract while the second is damage from non-performance. *Reliance Ins. Co. v. Gary C. Wyatt, Inc.*, 540 So.2d 688, 690 (Ala.1988). "The contractual liability endorsement provides coverage for the purpose of indemnifying a third party for damages in tort, not

---

**2.** "The 'liability assumed' exclusion clause has been taken to refer to 'liability incurred when one promises to indemnify or hold harmless another.'" *Aetna Cas. & Sur. Co. v. Cotter*, 26 Mass.App.Ct. 56, 522 N.E.2d 1013, 1014 (1988) (quoting *Wolov v. Michaud Bus Lines, Inc.*, 21 Mass.App. 60, 63 n. 7, 484 N.E.2d 644 (1985)).

In *Dreis & Krump Mfg. Co. v. Phoenix Ins. Co.*, 548 F.2d 681, 684 (7th Cir.1977), the Seventh Circuit Court of Appeals "construed the coverage language in the endorsement—'liability assumed by him under any written contract'—to mean a specific written agreement between the insured and some third party whereby the insured agrees to 'indemnify' the third party."

for business expenses directly incurred by the insured as a result of its contractual obligations." *Amertec–Granada, Inc. v. Old Republic Ins. Co.*, 421 So.2d 722, 722 (Fla.App.1982).

It is clear that an assumed liability coverage does not reach the breach of contract (or the fraud) lender liability complaint for which First Wyoming Bank can presently claim indemnity. The broad based research and argument of litigants in this appeal can be more appropriately confined to this inquiry since the only possible coverage which could create rights of indemnity for contractual breach against the lender under the circumstance presented is this assumed liability coverage and it will not suffice.

The foundational case for this subject is generally considered to have been *International Surplus Lines Ins. Co. v. Devonshire Coverage Corp.*, 93 Cal.App.3d 601, 155 Cal.Rptr. 870 (1979), which in itself was a complex case. Devonshire, as a general insurance agent, had purchased liability policies from International Surplus and Hartford Fire. It then, as agent for Central National Insurance, issued a fire policy on the Drexelbrook clubhouse in Pennsylvania. The Devonshire agency contract with Central National limited writing authority without re-insurance to $500,000 coverage. Unfortunately, it wrote in excess and the clubhouse burned. The Central National policy was written by Devonshire for Drexelbrook at a much higher limit, resulting in liability from fire damage of about $1.3 million.

Central National paid Drexelbrook on the fire policy and obtained judgment against Devonshire for $806,473.54. Devonshire then made claim against both International Surplus and Hartford Fire and the issues were litigated by declaratory judgment instituted by International Surplus in California. The substantive issue in dispute was directed to the duty of Devonshire to obtain re-insurance to protect Central National from losses of excess of $500,000.

Devonshire only sued Hartford Fire, and the California court held the Hartford Fire coverage of assumed liability did not cover negligent failure to obtain re-insurance or an assumption of third-party fire insurance coverage liability. The case defined the scope of assumed liability coverage and found it missing in the Hartford Fire policy. *Id.* 155 Cal.Rptr. at 876.[3]

A further recitation of the principle was provided by the South Dakota Supreme Court in *Haugan v. Home Indem. Co.*, 86 S.D. 406, 197 N.W.2d 18, 23 (1972), which states:

> Plaintiff further asserts the "Contractual Liability" section of the policies affords coverage because of the alleged breach of implied warranty. We cannot agree. A claim based upon an insured's breach of implied warranty is expressly provided for by the exception to exclusion (a) under the General Comprehensive Liability sections as we have previously noted and commented upon. In contrast, the insuring clause in the "Contractual Liability" section of the policies is limited to "contractual liability assumed by [the insured] under a contract". Breach of an implied warranty is not a contractual assumption of liability. The coverage under this section of the policies applies only to an assumption of another's liability. This contemplates an express contractual assumption of another's potential liability by an agreement to indemnify or hold another harmless for an obligation not otherwise imposed by law.

In general analysis, for a job site death case where coverage for settlement reimbursement was addressed, the Fifth Circuit Court of Appeals succinctly defined the scope of this character of insurance:

> Contractual liability coverage has a definite meaning. It is coverage of the insured's contractual assumption of the liability of another party. It typically is in the form of an indemnity agreement. * * * The assumption by contract of the

**3.** See the discussion of *Devonshire Coverage Corporation* by this court in *Action Ads, Inc. v. Great American Ins. Co.*, 685 P.2d 42, 44 (Wyo. 1984). That decision did not extend to the assumed liability concept presented here.

liability of another is distinct conceptually from the breach of one's contract with another.

*Musgrove v. Southland Corp.,* 898 F.2d 1041, 1044 (5th Cir.1990).

■ Without an undue reiteration of the voluminous material contained in this case's federal court complaint, it is clear that the contractual aspect elements related to two-party duties between the borrower and the bank, and in no regard raised, issues of assumed liability for which the insurance coverage could be invoked to create either a duty to defend or indemnity obligation. Although the issue is now of first impression for Wyoming, the case law in other jurisdictions is extensive and persuasive. Assumed liability coverage does not extend to a question of indemnity for first-party obligations for the breach of their own contract.[4] *Dreis & Krump Mfg. Co. v. Phoenix Ins. Co.,* 548 F.2d 681 (7th Cir.1977); *Globe Indem. Co. v. First American State Bank,* 720 F.Supp. 853 (W.D.Wash.1989), *aff'd* 904 F.2d 710 (9th Cir.1990); *Commercial Union Ins. Co. v. Basic American Medical, Inc.,* 703 F.Supp. 629 (E.D.Mich.1989); *Reliance Ins. Co.,* 540 So.2d 688; *Olympic, Inc. v. Providence Wash. Ins. Co. of Alaska,* 648 P.2d 1008 (Alaska 1982); *Loyola Marymount University v. Hartford Acc. & Indem. Co.,* 219 Cal.App.3d 1217, 271 Cal.Rptr. 528 (1990); *Fireman's Fund Ins. Co. v. City of Turlock,* 170 Cal.App.3d 988, 216 Cal.Rptr. 796 (1985); *West v. Jacobs,* 790 S.W.2d 475 (Mo.App.1990); *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group,* 37 Wash.App. 621, 681 P.2d 875 (1984).

On this aspect of the appeal, we concur in the decision of the district court regarding the summary judgment granted to the insurer on the contractual issues.

## V. DUTY TO DEFEND: THE NEGLIGENCE ISSUE

With disposition of the contractual issues, it is apparent that the remaining inquiry involves the duty to defend against the allegations of negligence contained in the lender's liability litigation. We will first consider the substance and criteria of general case law on the insurance carrier's duty to defend and then address the status of the record to determine whether the established test was met here.

The law of liability insurance coverage for duty to defend is neither cloudy nor controversial. Furthermore, Wyoming case law is available to relate to the established national concepts. *Morris v. Farmers Ins. Exchange,* 771 P.2d 1206 (Wyo. 1989); *Action Ads, Inc. v. Great American Ins. Co.,* 685 P.2d 42 (Wyo.1984); *Boston Ins. Co. v. Maddux Well Service,* 459 P.2d 777 (Wyo.1967); *Alm v. Hartford Fire Ins. Co.,* 369 P.2d 216 (Wyo.1962).

■ The duty to defend is a separate and distinct insurance coverage in a liability policy, *First Ins. Co. of Hawaii, Inc. v. State by Minami,* 66 Haw. 413, 665 P.2d 648 (1983), and the duty to defend is more extensive than the duty to indemnify. *Lionel Freedman, Inc. v. Glens Falls Ins. Co.,* 27 N.Y.2d 364, 318 N.Y.S.2d 303, 267 N.E.2d 93 (1971); *Paxton–Mitchell Co. v. Royal Indem. Co.,* 279 Or. 607, 569 P.2d 581 (1977); *Burnett v. Western Pac. Ins. Co.,* 255 Or. 547, 469 P.2d 602 (1970). The duty to defend, which is an independent consideration in liability insurance, is created by the policy terms and arises when a claim is made against the insured. It is, in effect, litigation insurance provided in the policy in addition to the general indemnity coverage. *Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 486 N.Y.S.2d 873, 875–76, 476 N.E.2d 272, 274–75 (1984). The test of the duty to defend is generally determined by the pleadings in which a claim against the insured is made. *Alm,* 369 P.2d at 219; *Stout v. Grain Dealers Mut. Ins. Co.,* 307 F.2d 521, 524 (4th Cir.1962).

---

**4.** The rule is stated in some cases that the assumed liability exists only for tort claims. That issue is not presented here and we do not decide the scope of any assumed liability coverage since a duty to a third party must exist for the coverage to occur and no such third-party duty situation is presented. *See, e.g., Fireman's Fund Ins. Co. v. City of Turlock,* 170 Cal.App.3d 988, 216 Cal.Rptr. 796 (1985).

Normally, the four-corners rule applies to define whether the claimant has pleaded in the carrier to create its duty to defend. *Avondale Industries, Inc. v. Travelers Indem. Co.*, 774 F.Supp. 1416, 1424 (S.D.N.Y. 1991); *Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991).

A comprehensive summary of the principles is provided in *Seaboard Sur. Co.*, 486 N.Y.S.2d at 875–76, 476 N.E.2d at 274–75 (quoting *International Paper Co. v. Continental Cas. Co.*, 35 N.Y.2d 322, 326, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974) and *Schwamb v. Fireman's Ins. Co. of Newark, New Jersey*, 41 N.Y.2d 947, 949, 394 N.Y.S.2d 632, 363 N.E.2d 356 (1977)):

> Where an insurance policy includes the insurer's promise to defend the insured against specified claims as well as to indemnify for actual liability, the insurer's duty to furnish a defense is broader than its obligation to indemnify. \* \* \* The duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be. \* \* \* The duty is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions. Rather, the duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased. \* \* \* Though policy coverage is often denominated as "liability insurance", where the insurer has made promises to defend "it is clear that [the coverage] is, in fact, 'litigation insurance' as well." \* \* \* As such, "[s]o long as the claims [asserted against the insured] may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer's responsibility to pay, there is no doubt that it is obligated to defend."

*See also Ruder & Finn, Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981). "If the claim, liberally construed, is within the embrace of the policy, the insurer must defend." *Axton Cross Co., Inc. v. Lumbermen's Mut. Cas. Co.*, 176 A.D.2d 482, 574 N.Y.S.2d 561, 562 (1991) (citing *Ruder & Finn, Inc.*, 439 N.Y.S.2d 858, 422 N.E.2d 518).

Federal case law accommodates the identical principles as summarized by reference to Florida law in *Trizec Properties, Inc. v. Biltmore Const. Co., Inc.*, 767 F.2d 810, 811–12 (11th Cir.1985) (quoting *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.*, 357 So.2d 253, 256 (Fla. 1978)):

> The duty to defend "depends solely on the allegations in the complaint filed against the insured." \* \* \* The complaint must allege facts which fairly bring the case within coverage even though ultimately there may be no liability on the part of the insured. \* \* \* If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit. \* \* \* The duty to defend is separate and apart from the duty to indemnify and the insurer may be required to defend a suit even if the later true facts show there is no coverage. \* \* \* All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured \* \* \*, and if the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered.

The potentiality of coverage test is rephrased in *Western World Ins. Co., Inc. v. Harford Mut. Ins. Co.*, 784 F.2d 558, 562 (4th Cir.1986):

> The sole controlling factor relating to Harford's duty to defend is whether the allegations contained in Sampson's complaint are such that a "potentiality" of coverage exists. An insurer has an obligation to defend an insured if, under the facts as alleged in the complaint, there is a potentiality that the claim could be covered by the policy.

Similarly phrased for District of Columbia law, *Continental Cas. Co. v. Cole*, 809 F.2d 891, 895 (D.C.Cir.1987) states:

> [T]he insurer's duty to defend hinges on the allegations against the insured. If the complaint states a cause of action within the coverage of the policy, the insurance company must defend. * * * Any doubt as to whether the cause of action falls within the terms of the policy must be resolved in the insured's favor. * * * Furthermore, it is standard insurance contract doctrine that ambiguous policy language should be construed in favor of the insured wherever reasonable. 2 *Couch on Insurance* § 15:74 (2d ed. 1984). We accordingly compare the contract language with the allegations made against C & G to see if those allegations fall within the coverage.

■ The obligation to defend arises from the allegations in the complaint directed to the potentiality of covered liability and not from ultimate facts that may be proven. *Boston Ins. Co.*, 459 P.2d at 779. Any doubt as to the adequacy of the pleadings to create the duty to defend is resolved in favor of the insured, *Pendlebury v. Western Cas. & Sur. Co.*, 89 Idaho 456, 461, 406 P.2d 129, 134 (1965), and the insurer has that duty to defend, even though the claim is false, groundless, *Boston Ins. Co.*, 459 P.2d at 778–79, or fraudulent. The promise to defend is not contingent upon the truth of the allegations of the complaint. 73 John Alan Appleman, *Insurance Law and Practice*, § 4682 (Berdal ed. 1979); 14 George J. Couch, *Couch on Insurance 2d*, § 51:48 (Anderson ed. 1982).

■ If one or more claims are made against the insured which is not within the policy coverage and other claims allege circumstances from which covered liability will result, the carrier has a duty to defend in general, even though only a portion of the claim is covered. *K.M. Ins. Brokers v.*

*International Ins. Co.*, 180 A.D.2d 407, 579 N.Y.S.2d 81 (1992). This is the partial coverage, residual duty to defend rule.

> "If the complaint filed against the insured alleges several causes of action some of which are not covered by the policy but one or more being within its terms, the insurer is bound to defend the action. * * * [Cases cited.]"

> Even where it is not free from doubt whether the company should defend, * * * the insurer should resolve the doubt in favor of the insured.

*Alm*, 369 P.2d at 219 (quoting *Ritchie v. Anchor Cas. Co.*, 135 Cal.App.2d 245, 286 P.2d 1000, 1006 (1955) and citing as precedent *Lee v. Aetna Cas. & Sur. Co.*, 178 F.2d 750 (2d Cir.1949)). *See also American Emp. Ins. Co. v. Continental Cas. Co.*, 85 N.M. 346, 512 P.2d 674 (1973).

An interesting analysis is provided by the Colorado Supreme Court in *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo.1991) (footnote omitted):

> Determining the duty to defend based on the allegations contained within the complaint comports with the insured's legitimate expectation of a defense, and prevents the insurer from evading coverage by filing a declaratory judgment action when the complaint against the insured is framed in terms of liability coverage contemplated by the insurance policy. *Hartford Ins. Group v. District Court*, 625 P.2d 1013, 1018 (Colo.1981).[5]

■ To summarize: To determine whether coverage existed for the duty to defend, we search for the existence of a potentiality of that coverage determined from the pleadings found in the initial litigation. This court reviews *de novo* the determination of a duty to defend which is a decision of law. *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485 (5th Cir.1992).

---

5. *Action Ads, Inc.*, 685 P.2d 42, which is cited by Continental, is not countervailing authority to these well-established principles regarding insurance carrier duty to defend. In *Action Ads, Inc.*, this court determined that the alleged duty violation was entirely contractual and not an insured risk covered by the liability policy. See also the intentional rather than the negligent conduct allegations in *St. Paul Fire and Marine Ins. Co. v. Campbell County School Dist. No. 1*, 612 F.Supp. 285 (D.Wyo.1985).

## VI. A NEGLIGENCE THEORY: LENDER LIABILITY LITIGATION

This a puzzling case with most unusual ingredients. It is puzzling because there is no rational explanation for the procedural conduct of the district court judge in disregarding the order of this court upon remand, which required a hearing on the *in camera* documentation as privileged, and then whose conduct in granting summary judgment without ruling on the compelled discovery; all of this in the face of the historical structure of the file and the activities which had required a change of judge. The case is puzzling in result since, through the first federal court litigation, the insurer *never denied* that some duty to defend did exist. Admittedly, the file is rife with "maybe tomorrow" and "give us more information" responses, but, at least through the settlement of the litigation in the federal court, the communications provided to the insured avoided unequivocally stating that a duty to defend did not exist.

The carrier monitored the litigation without direct participation until the insured obtained favorable court ruling on most issues and then went to settlement on the remaining claims. At that time, the carrier, with the prior litigation essentially resolved, filed this proceeding to disaffirm either indemnity or duty to defend. The case is classic in bad faith, if one includes knowledge to be obtained from the *in camera* adjustment service documents reflecting communications from variant personnel of the adjusting service and with the outside counsel which the adjusting service employed to provide an opinion regarding the coverage question.

The case is puzzling because negligence of First Wyoming Bank constituted a significant and continuing element in the lender's liability litigation. If First Wyoming Bank had extraordinary exposure and loss within the federal court proceedings, negligence and its possible constituent, punitive damages, created that exposure. Obviously, the expeditious settlement of the federal court proceedings by partial summary judgment eliminated the significant risk

leverage for any reasonably excessive recovery by the borrower litigants when the issues were compressed to the contractual claim and fraud. The case is puzzling since, obviously, the dollar issue presented here is, in practicality, confined to the cost of defense in the federal court litigation, but briefs and presentation to this court are predominantly directed to indemnity issues which were removed by the federal level summary judgment obtained by First Wyoming Bank when it represented itself in the federal court litigation.

Negligence, within tort concepts utilized for lender liability litigation which similarly include fraud and RICO as other examples, is a theory of recovery with extended case application and significant academic law journal analysis. *See MSA Tubular Products, Inc. v. First Bank and Trust Co., Yale, Oklahoma,* 869 F.2d 1422 (10th Cir. 1989); *Brunswick Bank & Trust Co. v. United States,* 707 F.2d 1355 (Fed.Cir. 1983); *First Nat. City Bank of New York v. Gonzalez,* 293 F.2d 919 (1st Cir.1961); *First Federal Sav. & Loan Ass'n of Hamilton v. Caudle,* 425 So.2d 1050 (Ala.1982); *Connor v. Great Western Sav. and Loan Ass'n,* 69 Cal.2d 850, 73 Cal.Rptr. 369, 447 P.2d 609 (1968); *Busby v. Parish Nat. Bank,* 464 So.2d 374 (La.App.1985); *Jacques v. First Nat. Bank of Maryland,* 307 Md. 527, 515 A.2d 756 (1986); *Berkline Corp. v. Bank of Mississippi,* 453 So.2d 699 (Miss.1984); and *Walters v. First Nat. Bank of Newark,* 69 Ohio St.2d 677, 433 N.E.2d 608 (1982). *Cf. K.M.C. Co., Inc. v. Irving Trust Co.,* 757 F.2d 752 (6th Cir. 1985) (fraud and good faith and fair dealing claims in addition to contractual violation complaints) and *State Nat. Bank of El Paso v. Farah Mfg. Co., Inc.,* 678 S.W.2d 661 (Tex.App.1984) (fraud, duress, and interference as tort claims). *See also Special Project: Lender Liability,* 42 Vand. L.Rev. 853 (1989); Robert C. Williamson, Jr. & Brenda Kay Tanner, *Lender Liability in Mississippi: A Survey, Comparison and Comment,* 57 Miss.L.J. 1 (1987); Robert C. Williamson, Jr. & Brenda Tanner Redfern, *Lender Liability in Mississippi: Part II Loan Commitments and Agree-*

ments, 59 Miss.L.J. 71 (1989); Werner F. Ebke and James R. Griffin, *Good Faith and Fair Dealing in Commercial Lending Transactions: From Covenant to Duty and Beyond*, 49 Ohio St.L.J. 1237 (1989); Adam Pressman, Comment, *Examining Lender Liability Actions After Foley: Are Tort Damages Still Possible?*, 22 Pac.L.J. 123 (1990); Thomas A. Rossi, *Lender Liability in Kansas: a Paradigm of Competing Tort and Contract Theories*, 29 Washburn L.J. 495 (1990); William N. Medlock, Comment, *Stemming the Tide of Lender Liability: Judicial and Legislative Reactions*, 67 Denv.U.L.Rev. 453 (1990); and Edward B. Kramer, Comment, *Louisiana Lender Liability*, 50 La.L.Rev. 143 (1989). A comprehensive bibliography of lender liability articles and comments is provided in Williamson & Redfern, *supra*, 59 Miss.L.J. at 71–72 n. 3.

Obviously, negligence allegations like those found here are neither novel nor unexpected in lender liability litigation.

## VII. CASE STATUS OF THIS LENDER LIABILITY NEGLIGENCE COMPLAINT: WHAT DOES THE RECORD REVEAL?

The district court, in granting summary judgment, disposed of the negligence claim which had been included in the lender liability litigation by a simple, one paragraph statement:

> The complaints filed by both Robinson and Russell were in contract and not negligence, although the lawsuits included a one sentence claim for negligence. Where a complaint[ ] sounds in contract and not negligence, the mere use of the word negligence alone cannot turn the complaint into a cause of action for negligence. *Lionel Freedman, Inc. v. Glens Falls Insurance Company* [27 N.Y.2d 364, 318 N.Y.S.2d 303], 267 N.E.2d 93 (N.Y.1971); *Stout v. Grain Dealers Mu-*

*tual Insurance Company*, 307 F.2d 521 (4th Cir.1962).[6]

This extended record, including voluminous pleadings which were directed to the negligence claim during the federal court proceedings, does not sustain the district court's cursory resolution in summary judgment as quoted above. We will examine that record. .

In *Robert A. Russell and Susan H. Russell v. First Wyoming Bank, N.A. Jackson Hole*, No. C86–0433 (D.Wyo.), in complaint and jury demand, December 11, 1986, the negligence issue was initially presented:

> FIFTH CLAIM FOR RELIEF (NEGLIGENCE)
>
> 38. Plaintiffs reallege each and every allegation contained in paragraphs 1 through 37 hereof, as if specifically set forth in this paragraph.
>
> 39. The defendants acted in a negligent and careless fashion in making the representations set forth above and in carrying on the banking relationship with the plaintiffs as described herein.
>
> 40. As a direct and proximate result of the negligence of defendants, the plaintiffs have been damaged in the amount of $2,000,000.00.

Enumeration of individual items of damage sustained from the alleged negligence is included as a general allegation of damage derived from the some five theories of lender liability.

In *Lewis S. and Linda T. Robinson v. First Wyoming Bank, N.A. Jackson Hole*, No. C86–0294 (D.Wyo.), the issue of negligence similarly appeared:

> FIFTH CLAIM FOR RELIEF (NEGLIGENCE)
>
> 35. Plaintiffs reallege each and every allegation contained in paragraphs 1 through 34 hereof, as if specifically set forth in this paragraph.
>
> 36. The defendants acted in a negligent and careless fashion in making the

---

**6.** Neither citation supports the broad statement made. *Lionel Freedman, Inc.*, 318 N.Y.S.2d 303, 267 N.E.2d 93, involved excluded elevator coverage in the policy and *Stout*, 307 F.2d 521, involved excluded court determined intentional conduct. The citations do not, like the frequently litigated homeowner's policy liability issues, sustain the statement made by the district court. *Morris*, 771 P.2d 1206; *Aetna Cas. & Sur. Co.*, 522 N.E.2d 1013.

representations set forth above and in carrying on the banking relationship with the plaintiffs as described herein.

37. As a direct and proximate result of the negligence of the defendants, the plaintiffs have been damaged in the amount of $2,000,000.00.

Additionally, punitive damages were requested in conjunction with allegations of willful and wanton misconduct. The claimed damage in the complaints was $5 million. The record reflects the subsequent attention to this claim for relief in the pending federal court proceedings. Defendants' Answer and Counterclaims states:

### ANSWERS TO FIFTH CLAIM FOR RELIEF

#### (Negligence)

12. Defendants adopt and incorporate by reference herein each and every response previously stated to paragraphs 1 through 37 of the Complaint.

13. Defendants deny each and every allegation contained in paragraphs 39 and 40 of the Complaint.

Plaintiffs' Pretrial Memorandum states:

6. Negligence of defendants.—This includes negligence in the representations made to the plaintiffs and in the method defendants dealt with the attorneys representing the plaintiffs in the Montana litigation.

Defendants' Pretrial Memorandum states:

15. Were Defendants, or either of them, negligent in making representations to Plaintiffs concerning verbal loan commitments or in carrying on the banking relationship with Plaintiffs?

16. Were Plaintiffs contributorily negligent in their dealings with Defendant Bank to such a degree that Plaintiffs' negligence is greater than that of Defendants'?

17. Have Plaintiffs been directly and proximately damaged as a result of Defendants' negligence and, if so, in what amount?

18. Have Plaintiffs failed to mitigate such damages, if any, as they may have sustained by virtue of Defendants' actions?

\* \* \* \* \* \*

6. Plaintiffs claim that Defendants, and each of them, were negligent in the representations made to Plaintiffs as concerns their loans and the handling of Plaintiffs' credits, which negligence was the direct and proximate cause of losses sustained by Plaintiffs.

\* \* \* \* \* \*

4. That Defendants were guilty of no act or omission which proximately caused any damage to Plaintiffs.

\* \* \* \* \* \*

6. Plaintiffs' claims are barred by Plaintiffs' contributory and comparative negligence which is equal to or greater than the negligence of either Defendant, if any.

7. That Plaintiffs' claims are barred by their voluntary assumption of the known risk.

8. That Plaintiffs have failed to mitigate such damages, if any, as they may have sustained.

The Order on Pretrial Conference stated:

Plaintiffs allege that defendants fraudulently misrepresented their commitment to loan funds to plaintiffs, refused to loan funds to plaintiffs in breach of contract, engaged in a pattern if racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), failed to observe their fiduciary duty to plaintiffs, and negligently failed to advise plaintiffs' attorneys of the fact that no funds would be loaned to plaintiffs.

\* \* \* Defendants contend that they owed no fiduciary duty to plaintiffs and claim that they owed no duties other than those set forth in the loan agreements between the parties. Defendants deny any negligence in their dealings with plaintiffs' counsel. Defendants contend that they owed no duty to the attorneys and that plaintiffs' negligence ex-

ceeds any negligence on defendants' part. Defendants finally claim that plaintiffs failed to mitigate any damage they suffered.

\* \* \* \* \* \*

5. CONTESTED ISSUES OF LAW: The legal issues in this case involve alleged breach of contract, fraud, breach of fiduciary duty, negligence, and violations of RICO. The counterclaim raises issues of the right to recovery on promissory notes.

The Memorandum in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment stated:

2. Defendants are entitled to summary judgment against the claims for fraud, breach of fiduciary duty, violations of the Racketeer Influenced and Corrupt Organization Act and negligence in this proceeding.

\* \* \* \* \* \*

### ARGUMENT IV

Plaintiffs must plead and prove four elements in an action for negligence: (1) duty, (2), violation of that duty, (3) proximately causing, (4) injury to plaintiff. *Thomas v. South Cheyenne Water & Sewer District*, 702 P.2d 1303 (Wyo. 1985); *Beard v. Brown*, 616 P.2d 726 (Wyo.1980).

The term "duty" has been defined as an obligation, the performance of which is required by law. An action for negligence cannot be maintained in the absence of one party owing a duty to another. *Thomas, supra; Norman v. City of Gillette*, 658 P.2d 697 (Wyo.1983).

The determination of whether a duty exists is a matter of law. *Thomas, supra; Medlock v. Van Wagner*, 625 P.2d 207 (Wyo.1981).

In the present case, Plaintiffs have failed to allege all of the elements for a negligence action.

First, Plaintiffs allege that Defendants failed to advise their attorneys regarding the Defendants' willingness to finance the lawsuit against the Montana Bank. Nevertheless, there is no evidence of any

kind that Defendants owed a duty to the Plaintiffs' attorneys who, in their own interests, inquired whether Defendants would pay their attorneys' fees. No contract exists that obligates Defendants to speak to Plaintiffs' attorneys and no duty is implied by law. Nor did Defendants undertake, either expressly or impliedly, any duty to Plaintiffs' attorneys. In fact, Defendants refused to become involved in any way with Plaintiffs' counsel from the outset.

Second, Plaintiffs have not alleged or demonstrated that they suffered any damages as a result of the Defendants' "failure" to speak with their attorneys for the reasons discussed in the preceding sections of this Memorandum.

Accordingly, Plaintiffs' claim for relief for negligence fails to allege two necessary elements: duty and damage. *Thomas v. South Cheyenne Water & Sewer District, supra.*

### CONCLUSION

Plaintiffs' Complaint fails to allege claims for fraud, breach of fiduciary duty, violations of the Racketeer Influenced and Corrupt Organizations Act, and negligence upon which relief can be granted and these claims should be dismissed with prejudice in the proceeding. In the alternative, Defendants request the Court to grant Summary Judgment in favor of the Defendants on the aforementioned claims as provided by Fed. R.Civ.P. 12.

\* \* \* \* \* \*

Plaintiffs' claim for negligence is insufficient since Plaintiffs have failed to allege that Defendants owed a recognizable duty to Plaintiffs' attorneys and Plaintiffs have failed to allege compensable damages.

Accordingly, the Court should dismiss the fraud, breach of fiduciary duty, violation of the Racketeer Influenced and Corrupt Organization Act and negligence claims from the Plaintiffs' Complaint and focus its attention on the one true issue

in this case—the alleged breach of an oral contract.

Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment stated:

### OVERVIEW

The Defendants claim that the Plaintiff's complaint fails to state claims for fraud, breach of fiduciary duty, RICO and negligence. When faced with a Motion to Dismiss, this Court must view the allegations of the Complaint in a light most favorable to the Plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232 [94 S.Ct. 1683, 40 L.Ed.2d 90] (1974); *Martin v. King*, 417 F.2d 458 (10th Cir.1969). In addition, dismissal for failure to state a claim should not be granted unless it appears without a doubt that Plaintiffs cannot prove any set of facts in support of their claims. *Kennedy v. Meacham*, 540 F.2d 1057, 1060 (10th Cir.1976).

Defendants also move for Summary Judgment as an alternative to their motion to dismiss. Such a motion amounts to a claim that there are no material issues of fact regarding the specific claims mentioned in the Defendants' Motion. It is well settled that the party moving for summary judgment, has the burden of establishing the nonexistance [sic] of genuine issues as to * * * any material fact and that they are entitled to judgment as a matter of law *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 [90 S.Ct. 1598, 26 L.Ed.2d 142] (1970); *SMS Manufacturing Co. v. U.S.–Mengel Plywoods, Inc.*, 219 F.2d 606 (10th Cir.1955). Because of the burden on Defendants, the evidence presented to this Court with this Memorandum and the pleadings must be construed in favor of the Plaintiffs, giving them the benefit of all favorable inferences which can be drawn therefrom. *Adickes, supra.; Bruce v. Martin–Marietta Corp.*, 544 F.2d 442 (10th Cir.1976).

In spite of the defendants['] failure to cite this court to a single portion of the record, the following arguments contain citations and excerpts from depositions and portions of the record to demonstrate the existence of genuine issues of material fact. Plaintiffs also refer to the pleadings in this case to demonstrate that Defendants' claims that they are insufficient are, similarly, without merit.

\* \* \* \* \* \*

### NEGLIGENCE

Defendants final argument relates to the negligence claim of the Plaintiffs. As in their other aspects of this motion, Defendants have limited this motion to the Pleadings since no references to any facts in the record are offered by the Defendants to support their contentions. Defendants['] first contention relating to this claim is that the Plaintiffs have failed to allege the existence of a duty. The strongest thrust of the defendants' arguments is their contention that they owed no duty to the Plaintiffs' attorneys in the Montana litigation. This contention demonstrates that there is confusion as to the duty which is at issue. Plaintiffs contend that the duty which needs to be established is that duty which the Defendants owed to the Plaintiffs themselves, not the Plaintiffs' attorneys. The Defendants do not and cannot dispute the fact that they owed a duty to the Plaintiffs, not to negligently cause injury or damage to them. Defendants would like to separate the Plaintiffs['] attorneys from the Plaintiffs and classify each as an entirely separate entity. This argument loses some of its impact when it is realized that the Plaintiffs['] attorneys were merely the agents of the Plaintiffs who had a right not to have the Bank negligently (or intentionally) mislead them.

During the period Robinson and Russells' attorneys were writing the Bank, the Bank either negligently or intentionally failed to advise them (and Robinson and Russell) of its true intention to deny that a commitment was made. Not only were the Plaintiffs and Russell misinformed, but their Montana lawyers were misinformed as well. These lawyers

wrote the Bank time after time advising the Bank that they were relying upon the commitments Robinson and Russell told them the Bank had made. No secret was made by Robinson or Russell or the lawyers representing them of the fact of these commitments or the reliance of the Plaintiffs and their lawyers upon them. Not only did the lawyers write the Bank, but they called as well. No phone call was returned and no letter was answered until after Bank president Deming had been fired and the Bank belatedly told the Plaintiffs['] lawyers that there was no commitment.

The Plaintiffs contend the breach of duty to them occurred, in part, when the Defendants misinformed and mislead them and their agents. This included misfeasance on the part of the Defendants by failing to communicate the Bank's intentions not to honor its commitments to them. The failure of the Defendants to communicate this intent was a breach of the duty which was owed to the Plaintiffs. There can be no question that a bank owes its customers a duty to utilize at least ordinary care in dealing with their affairs. The existence of such a duty is alleged in the pleadings and is discussed at length throughout the deposition of the witnesses for the Plaintiffs and Defendants. Deming[']s testimony with respect to his responsibility to follow through upon receiving letters from attorneys Cok & Wheat is as follows:

"Q. .. in general, language like that coming into the bank which indicates that some third person out there like Mr. Wheat is mistaken and thinks the bank has made a commitment would require a response from the Bank?

"A. Yes.

"Q. And the best way to respond to a document like that would be in writing, and the second best way would be orally?

"Q. True?

"A. Or through the customer."

\* \* \* \* \* \*

Defendants next contend that the Plaintiffs have failed to allege that they suffered any damages as a result of the Defendants' negligence. Here again, the Defendants refer to the "failure" of the Defendants to communicate with Plaintiffs' attorneys in Montana. For reasons set forth above, this contention misses the point. Reference is hereby made to the Plaintiffs' Second Amended Complaint in which it is alleged that the Plaintiffs were damaged as a direct and proximate result of the negligence of the Defendants. The existence of issues of fact on issues relating to the damages suffered by Plaintiffs as a result of the misconduct of Defendants is discussed in considerable detail, supra, and will not be repeated here. This element of Plaintiffs['] negligence cause of action is not only plead by Plaintiffs but is well evidenced in the deposition excerpts of Plaintiffs, Robert Russell, and Plaintiffs' expert economist. Therefore, the Plaintiffs' claim for negligence is not subject to dismissal on the pleadings and summary judgment is inappropriate for this claim.

Litigation of negligence in the federal court came to an end in a partial summary judgment in the *Robinson* case and was followed by a similar order in the *Russell* litigation. The dispositive decision, signed by United States District Judge Alan B. Johnson on April 29, 1987, provided:

This is an action for damages for alleged breach of contract, fraud, breach of fiduciary duty, and negligence, as well as for alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) * * * Defendants seek dismissal of or, in the alternative, summary judgment on plaintiffs' claims of fraud, breach of fiduciary duty, negligence, and violations of RICO. Defendants do not challenge plaintiffs' breach of contract claim [for summary judgment disposition]. The success of plaintiffs' cause of action for fraud depends on whether defendants agreed to finance plaintiffs' activities and, if so, whether defendants entered the commitment with an inten-

tion not to perform. These factual questions preclude granting summary judgment. The Court concludes, however, that no material factual dispute exists concerning the negligence, breach of fiduciary duty and RICO claims and that defendants are entitled to judgment as a matter of law. Partial summary judgment consequently will be granted to defendants.

\*　　\*　　\*　　\*　　\*　　\*

Plaintiffs assert that defendants acted negligently by failing to inform plaintiffs' counsel of the decision not to finance the litigation pending in the Montana courts. A negligence action requires proof of a duty of care, the breach of which proximately causes an injury resulting in damage. *Norman v. City of Gillette*, 658 P.2d 697, 699 (Wyo.1983). Nothing in the record shows that the defendants owed a duty to plaintiffs' counsel. Defendants are therefore entitled to summary judgment on this issue as a matter of law.

\*　　\*　　\*　　\*　　\*　　\*

ORDERED and ADJUDGED that defendants' motion for summary judgment on plaintiffs' claims of negligence, breach of fiduciary duty and RICO violations be, and the same hereby is, granted and that said claims be dismissed on the merits.

## VIII. SUMMARY JUDGMENT FOR THE INSURER: WAS IT APPROPRIATE FOR THIS INSURED RISK?

■ As previously noted, the remaining lender liability claims were settled, by agreement, for entry of a judgment compromising downward the note balance remaining. Clearly, the significant involvement of a negligence complaint in the litigation created a duty to defend unless the particular character of the claim for damage resulting from negligence establishes, as a matter of law, that coverage under any construction of the pleadings could not be invoked. In first simplistic application, the pervasive attention directed by the liti-

gants to the claims for damages in the multi-million dollar total clearly denies disposition on a summary judgment concept. Furthermore, it is clear that the fact that in-house counsel, in representing the insured, effectively and successfully ended the litigation is in no way determinative of the carrier's duty to defend policy coverage.

A detailed analysis of the entire file reveals, as the litigation developed, that the damage aspect of the negligence claim was derived from three functional events and a number of resulting occurrences. The functional events were, first, that the negligent failure caused an IRS tax lien to be levied against the tangible property of the borrower. The second charge is that failure to meet the fiduciary duty in negligently denying the loan to fund the Montana litigation which resulted in a required change by the plaintiffs from a fixed fee arrangement to a contingent fee. That cost, in ultimate dollars, totaled, by variant estimates, perhaps $200,000 with some statements charging "losses" of even much larger amounts (more than one million dollars). The third element was negligent action in withdrawn loan commitment which either caused a foreclosure loss of one litigant's house or at least required refinancing at a much higher interest cost than otherwise would have occurred. Asserted items of damage, which can be extrapolated at variant times throughout the enfolding record, include personal injury trauma, property loss, business damage, and adverse effect to personal reputation and credit standing. Variant other claims were made but, of course, under the circumstances of the litigative defense of the insured, the validity and sufficiency was determined by the United States District Court summary judgment rejecting any duty and liability assessment against the lender.

Considering the initiation of the federal court lender's liability litigation and the immediate tender of defense by the insured shortly thereafter, the actual denial, if in fact it ever occurred, first came regarding the duty to defend in a communication,

coincidentally also dated April 29, 1987, which was obviously after counsel knew that the federal court summary judgment was forthcoming and, in fact, entered on April 29 in one of the two pending cases.

The test for a grant of summary judgment has been restated in a number of recent Wyoming cases. In a recent case, we said: "Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law." *McDonald v. Mobil Coal Producing, Inc.,* 789 P.2d 866, 869 (Wyo.1990). Required for entry of summary judgment is the dual finding that there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. *Stratman v. Admiral Beverage Corp.,* 760 P.2d 974 (Wyo.1988). See likewise, in setting forth the detailed rules, *Davenport v. Epperly,* 744 P.2d 1110 (Wyo.1987) and *Cordova v. Gosar,* 719 P.2d 625 (Wyo. 1986).

█ It is apparent on the face of the record that genuinely offered contested issues of negligence were presented in the lender liability litigation pursued in the federal court proceedings. The "mere use of the word negligence" characterization applied by the district court is not authenticated in the federal court record. Issues of the duty to defend and scope and extent of that duty raised by the negligence complaint were improperly determined by the summary judgment granted to the insurer to deny duty to defend. With review of the policy provisions, consideration of the determined federal court record and application of established principles of law, we determine a duty to defend was created and, conversely, summary judgment for the insurer was inappropriate.[7]

## IX. INDEMNITY

Residual issues regarding insurance coverage indemnity require evaluation of the federal court litigation, partial summary judgment, and subsequent broad contract claims settlement. The negligence issue raises no indemnity responsibility since the disposition occurred by adverse summary judgment in the federal court. Actually, the starting point for indemnity is that place and leaves, following summary judgment, the issue only whether payments made (constituting debt forgiveness) can now properly be presented as an indemnity obligation of the insured. Clearly, indemnity, as to the contractual issue, has been resolved by our prior decision on denying assumed liability coverage. Summary judgment disposed of RICO and negligence, and fraud would not have been a covered claim. Consequently, we conclude that the district court correctly granted summary judgment on issues of insurance company indemnity coverage favoring the carrier on both contractual and negligence theories. *Miller v. Rissler & McMurry Co.,* 794 P.2d 91 (Wyo.1990). Policy provisions and the record of the proceedings in the federal court litigation are dispositive. *Matter of Estate of Roosa,* 753 P.2d 1028 (Wyo.1988); *Stalkup v. State Dept. of Environmental Quality (DEQ),* 838 P.2d 705 (Wyo.1992).

## X. *IN CAMERA* DOCUMENTARY FILE: STATUS OF DISCOVERY ALLOWED TO FIRST WYOMING BANK

We address the further issue that is presented in this record for several reasons. Considering the status of this record, we are reluctant to grant a specific summary judgment to the insured at this juncture regarding the issue of duty to defend. We cannot in finite total since the amount is not determined. Additionally, we are faced with the fact that we have twice remanded

---

7. The insured's claim for its defense cost reimbursement incurred in the federal court litigation may raise proration issues which we have not directly considered. Clearly, the total amount incurred by the insured is also not established in this record and whether its incurrence as attorneys fees and litigative costs was reasonable under the circumstances. Those issues can be more suitably addressed with remand for further proceedings where itemized statements in proper detail are provided. *Hinckley v. Hinckley,* 812 P.2d 907 (Wyo.1991); *UNC Teton Exploration Drilling, Inc. v. Peyton,* 774 P.2d 584 (Wyo.1989).

this case for a determination by the district court regarding discovery and that issue remains unresolved. The counterclaim is overtly viable, at least in the context of preliminary pleadings. For these reasons, we then look at the discovery issue again presented in this third appeal.

The bizarre course of events between September 1986 and the end of March 1987 are showcased within a course of events which brought this case twice to this court on direct proceedings and then resulted in reassignment to the district court judge who entered the orders from which appeal was presented.

During the course of the litigation, in late 1987 and early 1988, counsel for Continental missed discovery deadlines resulting in entry by the district court of a default on liability and a direction to comply with discovery which included furnishing for examination the adjusting agency files which had been developed in the period of September 1986 to March 1987. Counsel for the insurer, in contending that they at least deserved a hearing, convinced this court, by a petition for writ of prohibition, to return the case to the Teton County, Wyoming District Court to determine whether a hearing should be provided before disclosure of the *in camera* documents would be provided. The results were unsatisfactory to the insurer and a second petition was filed in this court which resulted in an additional order requiring a hearing on discovery of the *in camera* documents and concurrently directed reassignment to another district court judge. During the course of those activities, counsel for First Wyoming Bank was accidentally given the *in camera* documents by a mistake of staff in this court. The attorney had an opportunity to review the documentation in a modest degree and had made some notes.

Relevancy of documentation in regard to both duty to defend, e.g., ostensible coverage, and activities relating to indicia of bad faith to be found within the documentation was clearly not to be questioned. The issue was whether an attorney/client or a work-product privilege of some kind denied access of the documentation which was in

the *in camera* material to the insured regarding the planning and conduct of the insurer. The *in camera* material stopped abruptly at a point where no decision had yet been made by anyone in behalf of the insurer that an unequivocal denial of coverage for both indemnity and duty to defend would be made.

This court ordered counsel for the insured to turn over his notes and further specifically directed by order of January 19, 1989:

> This matter having come before the court on its own motion, and the court finding it necessary to review certain other documents not included in the record, it is
>
> ORDERED that counsel provide this court with all materials given to the District Court, Teton County for in camera inspection in Civil Action No. 6917 and former Supreme Court No. 88–32.

The posture of the litigation at that juncture left the motion for discovery pending whether the insured would be granted access to the insurance company file covering adjustment activities which predated final claim denial. This is the *in camera* file. After reassignment of the case to a district court judge from another judicial district, the issue of discovery was comprehensively briefed. Continental then moved to sever bad faith from coverage, e.g., take the counterclaim out of the litigation for initial decision in order that issues of availability of the *in camera* material would not be resolved initially. Just exactly how the district court thought that was appropriate is not clarified since the decision of this court on remand directed a hearing on that specific issue. Additionally, the prior district court judge had already denied the insurer's motion for summary judgment at an earlier period of the litigation.

A curious inclusion is found in the documentation filed by Continental in the district court, which is a part of a March 26, 1990 reply brief and affidavit of Continental in support of its motion for protective order. Counsel for Continental states:

## II. CONTINENTAL'S ARGUMENTS

### A. Don't Let The Bank "Play Dumb."

At page 18 of its Memorandum, the bank's attorney tells this Court that

> "Since the documents which are the subject to Defendants' Motion To Compel have not been produced, Defendants are somewhat at a disadvantage, *as the contents of those documents are unknown* (my emphasis)."

How soon we forget.

Attached to this Memorandum, and incorporated by reference, is the correspondence between counsel and the Wyoming Supreme Court concerning [First Wyoming Bank's attorney's] *actual review* of those 81 privileged documents. As the Court can see, [First Wyoming Bank's attorney] was given the keys to the henhouse, and he walked right in. [First Wyoming Bank's attorney] read all of those documents ... and he even made notes. Attached hereto is Chief Justice Cardine's January 30, 1989 letter Order, and [First Wyoming Bank's attorney's] actual notes of his review of these privileged documents.

> [First Wyoming Bank's attorney] knows very well what is in these privileged documents. It strains credulity for him to now say "... the contents of those documents are unknown." Don't let the bank play dumb.

(Emphasis in original.)

The serious problem with this statement, as addressed to the district court, is that this tribunal had ordered, under threat of most severe sanction, that counsel for the insured not recall or utilize what he would have known to have been included in those documents. In effect, the insurer had pleaded in to the proceedings at that late stage the untoward examination of the *in camera* documents without recognizing the hinderance that it created as an ethical and moral responsibility of First Wyoming Bank's counsel. The genesis of this issue is first found in two affidavits filed in the proceedings in Teton County—one by a previous attorney for First Wyoming Bank and the other filed by the president of Idaho Intermountain Claims, Inc., a underwriting/adjustment company franchisee.

In the affidavit, dated March 28, 1988, the attorney, R. Michael Mullikin of Jackson, Wyoming, stated regarding *Continental Insurance Co. v. First Wyoming Bank*, Civil Action No. 6917:

> 4. Affiant and John Weeks of Idaho Intermountain Claims, Inc. met in affiant's office on March 9, 1987 at the request of John Weeks to discuss the matter of insurance coverage with respect to pending litigation, including litigation between First Wyoming Bank and Lewis Robinson and Robert Russell. In the course of said conversation, John Weeks stated to affiant that it was his view that Continental Insurance Company had coverage with respect to the allegations of the complaint relating to breach of contract in connection with the Russell/Robinson litigation with First Wyoming Bank.

John E. Weeks responded with an affidavit, likewise filed in the same proceeding, in which he recalled differently:

> 2. I was in the office of R. Michael Mullikin, attorney at law, on March 9, 1987 to discuss the Berger case.
>
> 3. I have always taken the position that there was no coverage under the Policy of Insurance No. CPT900356 issued by Continental Insurance Company to First Wyoming Bank for the Complaint and Allegations filed by Lewis S. Robinson, et al. and Robert Russell, et al. against First Wyoming Bank and First Wyoming Bancorporation.
>
> 4. I did not tell R. Michael Mullikin that there was coverage with Continental Insurance Company with respect to the allegations of the Robinson/Russell litigation with First Wyoming Bank.
>
> 5. I do not believe there is coverage under said policy.
>
> Dated this 5th day of April, 1988.

The affidavit was sworn to before Douglas J. Balfour, whose name prominently appears in the *in camera* documents, which are the subject matter of this evaluation.

The record shows that in the parallel case of *Berger v. First Wyoming Bank*, Continental, through its adjusting service, Idaho Intermountain Claims, by a non-waiver letter of September 30, 1987, undertook to provide a defense under the same policy in *Berger* which was denied in *Robinson/Russell*. The case in coverage elements was substantially identical in addressing a claim of failure to fund an agreed line of credit.

Sequentially, the *in camera* disclosure issue initially arose from a demand for production to which untimely objection was taken. The district court ordered discovery and liability assessment as a sanction. This court, in response to the district court *in two separate proceedings*, remanded to provide a right of hearing for the insurance company and to require *in camera* inspection of the documents by the district court. In the process of those proceedings, by accident while the record was on file in this court, the *in camera* documents were provided to counsel for First Wyoming Bank who, without fault or countervailing direction, had occasion to examine the records in modest detail. Notes were made regarding documents of relevance to a recognition of the duty to defend or possible

coverage in correspondence involving principally the Idaho adjustment service, but not entirely. When, during the pendency of the original proceedings in this court, this mistake became known, this court, in order to ameliorate what had occurred and to provide first opportunity to the district court to determine the issue of disclosure, first addressed the subject in a letter to counsel and then by reference in the issued decision. In the letter, the following directions were included:

a. [First Wyoming Bank's attorney] should immediately deliver to the Court any notes, memoranda, or instruments he may have prepared as a result of his examination of these documents.

b. [First Wyoming Bank's attorney] is not to make use of any of the documents which are ultimately found to be privileged.

c. Any reference to privileged documents revealed as a result of the examination, either in examination, cross-examination, trial, or in any manner whatsoever, will result in sanctions as appropriate, including dismissal of the case.[8]

---

**8.** The first order of remand of February 24, 1988 provided:

This matter having come before the court upon respondents' Petition for Writ of Prohibition and/or Writ of Mandamus and/or Writ of Certiorari and/or Other Relief and the court having reviewed said petition, the pleadings and documents attached thereto and being fully advised, finds that the District Court, Ninth Judicial District on January 8, 1988, without affording a hearing to the parties, entered an order requiring that plaintiff "respond to the discovery not later than noon, January 20, 1988"; that pursuant to said order extending the time for response to January 27, 1988, plaintiff did "respond to discovery" by filing, on January 25, 1988, a motion for reconsideration, motion to compel, and response to motion to compel, motion for protective order, request for hearing, supplemental answers to interrogatories, attached certain documents which were produced together with a list of documents not produced claiming attorney-client and work-product privilege; that the court did then, on January 29, 1988, without affording a hearing to plaintiff, entered an order denying the motion for protective order and for reconsideration and request for setting and denying a hearing and

entered judgment in favor of defendants and against plaintiff on plaintiff's complaint and providing that the case go forward upon defendants' counterclaim. The court, after careful consideration now finds that the court's order of January 8, 1988, as stated, only required a response to discovery rather than a production of documents; that a response to discovery was filed by plaintiff; that there are substantial questions that should be considered by the court, including but not limited to the question of privilege with respect to some or all of the documents sought in discovery; whether one or all attorneys or their clients are responsible for the failure to respond to discovery in time; whether an in-camera inspection by the court is appropriate; and whether sanctions might better serve the interests of justice than dismissal. Wherefore it is hereby

ORDERED that the order filed January 29, 1988 dismissing plaintiff's complaint is reversed and this cause is remanded to the district court for consideration of questions of privilege with respect to documents sought in production, the appropriateness of an in-camera inspection, the sufficiency of the response filed by plaintiff, whether sanctions, dismissal

In decision of *Continental Ins. Co.*, 771 P.2d at 377, this court remanded for a hearing to be provided on the disclosure and privilege issue and then further directed:

> ORDERED that counsel for First Wyoming Bank, N.A.—Jackson Hole, and First Wyoming Bancorporation, * * *, as a result of a mistake initiated by this Court, having perused improperly the documents submitted to this Court for in camera inspection, immediately shall deliver to this Court any notes, memoranda, or other instruments he may have prepared as a product of his examination of those documents submitted for in camera inspection; [Bank's counsel] shall not disclose to anyone the contents of the documents he did peruse; he shall advise this Court in writing, within ten (10) days, of the names and addresses of any persons to whom he has disclosed any such information; he shall make no use whatsoever of any of the documents or information contained therein which ultimately are ruled to be privileged; he shall make no reference to any privileged document revealed as a result of his perusal of the documents submitted for in camera inspection, either in examination, cross-examination, trial, colloquy, or in any manner whatsoever, and his failure to faithfully comply with these prohibitions will result in such appropriate sanctions as this Court may order.

The structure of the case was then well determined at that status, which encompassed a remand to the district court to consider the issue of waiver of objection, privilege and disclosure, and thereafter, as to any documents which were found to be privileged. Use in any way by First Wyoming Bank was foreclosed.[9]

In August 1989, First Wyoming Bank's counsel requested a scheduling conference and hearing on the outstanding discovery dispute. Following reassignment to another district court judge, argument on discovery was set, by order dated January 29, 1990, to be held April 6, 1990. An order on the motion for protective order was entered January 31, 1990 requesting additional briefing and record supplementation. The insurer filed a foundational statement, including allegations of fact, not necessarily either of prior record, in this exhaustive melange, nor supported by other sworn testimony by attachment. The principal thrust of the claimed privilege was attorney/client privilege as a work-product exclusion from right of discovery. The failure of movant's filing to attach sworn documentation was consequently recognized in First Wyoming Bank's response. We are faced with the same problem of comprehensive, factual analysis without evidence upon which a decision could properly be based.

This leaves this court with a superseding issue—whether the insured, under the circumstances of this record, was entitled to have a decision of the district court regarding discoverability of the adjustment service correspondence as relevant either to duty to defend or the bad faith counterclaim. All of the correspondence at issue comes at a time before notice was given that a defense or reimbursement would not be provided. Added to the complexity is the state of the record revealing the previously quoted affidavit filed by the managing officer of the adjusting service which, in factual analysis, is, at least questionably, untrue if not directly false.

The conceptual element, of considerable moment disregarding of the issues of initial failure to timely object which was the basis of the original district court decision, is now involved in work-product immunization or attorney-client privilege at a time when the insured has not been advised that coverage will be denied. The sole authority of

---

or other remedy ought to be afforded or imposed upon either party and such other matters as appropriately ought to be considered at a hearing afforded the parties herein.

9. The response, by letter, to the Chief Justice of the Wyoming Supreme Court received from counsel for First Wyoming Bank reflected compliance with the order requirements, including inclusion of a work sheet prepared from an examination of the *in camera* documents, including penciled notation of reference where admission of duty to defend was provided.

Wyoming law, *Thomas v. Harrison*, 634 P.2d 328 (Wyo.1981), in which the trial court's discovery decision was approved on appeal by an exercised discretion analysis, cannot resolve the issue. It is perhaps noteworthy that in the *Thomas* three-to-two decision, only one member of that court presently remains on this tribunal and the clearly differentiated issues were statements of the insured to his carrier and not questions of bad faith of the carrier refusing to defend.

Under the posture now presented in this court, the issues of either the waiver by failure to object or the underlying privilege concepts are neither argued nor briefed for our present decision. Furthermore, a factual basis is not established by admissible evidence to delineate the relationships of the various authors whose written comments are included in the *in camera* documentation. An alter ego conceptualization that the adjusting service is in reality the insurer-litigant cannot be factually analyzed on the documentation provided by this record. Additionally, the broad operational differences between right to discover and admissibility of evidence are surely not ripe for this court's analysis where the district court has not yet rendered any decision on either.

 Consequently, we conclude that the status of discovery and *in camera* inspection is in exactly the same fashion as existed when the decision was rendered and the remand made in *Continental Ins. Co.*, 771 P.2d 374. A determination of privilege is required to restrict argument or use by counsel for First Wyoming Bank. Counsel is not precluded from at least arguing that he should have access to test the validity or potential perjury of a filed affidavit, for example, in motion practice that predates commencement of the trial, if one should occur.

 There is a modest, and a major, problem which is found in the *in camera* documentation. The modest problem is that, at variant times in the course of this litigation, the insurer had included documents for evidentiary purposes as correspondence within the institution, e.g., inter-office memoranda to the adjusting service's counsel, etc. The documentation that was included for this record include memoranda of October 8, October 14, October 23, November 3, December 4, December 28, 1986, and February 12, 1987, as in-house communication contained in a volume entitled, "Materials Submitted by Continental in Support of Its Motion for Summary Judgment." Other in-house documentation were submitted by Continental at variant times to support its contention, after that fact, that a no-coverage decision had been properly made. A selective release of documents was utilized by Continental to support the summary judgment motion and to oppose issues presented by First Wyoming Bank. First Wyoming Bank's counsel could not even argue the selectiveness of the documents since that would arguably put him in violation of the expressed preclusion which had been entered by this court's direct order requiring him to forget what he had earlier learned from an examination of the *in camera* files. Privilege is waived when the party claiming the privilege releases the document. *People v. Calandra*, 120 Misc.2d 1059, 467 N.Y.S.2d 141 (1983); *Freeman v. Bianchi*, 820 S.W.2d 853 (Tex.App.1991).

 What is not included is the following, as each dated on a time before a final denial was made and never made available by the discovery process in the selectively used filed documents: a letter of March 18, 1987 where the following three paragraphs were included while generally assessing, at that date, that an indemnity obligation would not exist:

There is a very strong potential that a court would find Continental owed a duty to defend this suit. A duty to defend is a separate duty owed to an insured under the insurance policy, different than the duty to indemnify for any losses. A duty to defend, in general, arises when a claim is made which alleges conduct and damages which potentially would be covered under a liability insurance policy. In this case Continental issued to the Bank and the Bancorporation a comprehensive general liability policy, with an

incidental contract endorsement. Covered were property damage and bodily injury caused by an occurrence.

\* \* \* \* \* \*

There do not appear to be any allegations of bodily injury, which would be the other damage covered by the policy. However, the initial allegations probably do rise to the point where Continental owes a duty to defend the suit. Therefore, Continental would probably be liable for defense costs in this matter.

As far as we can tell, even though the economists testimony is very sketchy and this point has yet to be developed, there probably has not been any property damage suffered which plaintiffs' will be able to prove at trial. Thus, for purposes of Continental's policy, although things could change between now and the trial date, we do not anticipate that Continental will have a duty to indemnify the insureds for any losses that arise out of this suit. This is because the general rule is that pure economic losses are not property damage within the meaning of the comprehensive general liability policy. It does appear that most of the allegations concerning losses are pure economic losses. The case really seems to seek damages for lost business opportunities, which are probably not a covered damage.

A March 19, 1987 inter-office communication stated in part:

I have read the entire treatise submitted by our counsel under date of March 18 and tend to agree with the general position he [has] taken. I believe the contractual endorsement on our policy will tie is into coverage and I believe our duty to defend is greater than the duty to indemnify and consequently we should assume the defense of the entire matter as outlined on both these claim files now being submitted.

A March 16, 1987 letter between the franchise manager of the adjusting service to the senior claims examiner, regarding a letter received from the attorney who had been employed to assess the existence of coverage, stated in part:

His complete report will be in my hands no later than the middle of next week. Briefly in his considered opinion only a very small portion of the Summons and Complaint filed by both plaintiffs Russell and Robinson fall within the preview of coverage and in that section our defense counsel also believes that those that do fall within coverage of the damages issue will be resolved on non-suit.

However, he believes that we do owe a defense in this matter and his full report will be in my hands no later than the 20th. He estimates the defense cost expended by the bank to date approximates $70,000 and at the time of trial which was set for May 25 will approximate $120,000.

A March 18, 1987 communication stated:

I think that this is very comprehensive and the bottom line would be, it appears to us that a defense would probably be the obligation of Continental under these circumstances. The question that you raised would be whether we would owe the entire defense because there are many aspects of this defense, R.I.C.O. and punitive damages that might well not be covered under the policy, and certainly I think this is well taken, and by copy of this letter will ask that Doug Balfour give this the proper consideration.

A March 26, 1987 communication stated:

I believe that the facts set out by our attorney as well as the coverage analysis by him are very well done, and his points are well taken. I think that the key to the entire question of whether we owe defense is of course the word "potentially". If the allegations are potentially covered, then under the comprehensive general liability policy with the incidental contract endorsement we would have coverage. I find it a little difficult in my own mind to find the property damage (BI being positively ruled out). However, after reading his analysis, I concur that we do owe the defense, and, under the facts that we now have as well as the

Summons and Complaints with the causes of action laid as they are, we would owe no indemnity.

An April 8, 1987 communication stated:

We continue to believe that Continental probably did owe a defense to the insureds based upon the policy issued, the claim made, and the general allegations of the Complaints. However, the scope of that defense owed would not include pursuit of the counterclaims in this matter seeking to collect on the underlying notes. To that end, it is our firm belief that "reasonable" attorney fees which may be borne by Continental would not include all of the claimed fees from defense counsel. Certainly a good argument can be made that the defendant Bancorporation and Bank would have to have had their own attorney, probably Speight, participate equally in the defense of this case and the pursuit of the counterclaims. However, it is also clear from the nature of the discovery and other legal fees incurred to date that very little time has been spent on the counterclaim as there are few contested issues regarding it. The vast bulk of the time has been spent in direct defense of the allegations contained in the Robinson and Russell Complaints.

A March 10, 1987 communication stated:

We discussed the matter of possible coverage with [First Wyoming Bank's local attorney] at some length. He stated that he had not gone into the coverage question in detail and had done no research. He stated that the plaintiffs' allegations were very broad, alleging many things including breach of contract, negligence as well as fraud, etc. He stated that he thought there was an excellent chance that coverage would apply under the policy through negligence and contractual liability and there seemed to be no doubt at all in his mind but what a defense certainly must be tendered under the policy. For your information, [First Wyoming Bank's local attorney] states that over half of his practice is in the defense end of the field for various insurance companies and that he has in the past worked for St. Paul, Safeco and U.S.F. & G. and other companies.

In an undated coverage analysis:

The allegations in both Robinsons' and Russells' complaint against First Wyoming clearly state a cause of action based in negligence. This allegation of negligence is most likely sufficient, standing alone, to trigger Continental's duty to defend First Wyoming against this claim. Even if the allegations of negligence are groundless, the language in the insuring grant itself creates this duty to defend. The Russells' allegations that tax liens have been placed upon their residence creates an ambiguity with regard to whether property damage has occurred. Under *Alm, supra*, [369 P.2d 216], the Wyoming courts would most likely resolve this ambiguity in favor of First Wyoming and the plaintiffs, at least insofar as a duty to defend is concerned. Indeed, the *Alm* holding appears to place the burden of resolving the doubt on the insurer stating that "the insurer should resolve the doubt in favor of the insured." 369 P.2d at 219.

\* \* \* \* \* \*

With regard to the duty to defend, the burden shifts to Continental to demonstrate two things if a refusal of defense is contemplated. First, Continental must demonstrate clearly and unambiguously that the type of conduct alleged in the complaint is not covered within the CGL policy. Allegations of negligence in both complaints clearly trigger a duty to defend under the CGL policy. With the incorporation of the contractual liability endorsement, allegations of breach of contract also probably trigger a duty to defend under the terms of the CGL policy.

Second, Continental must demonstrate clearly and unambiguously that the losses claimed under the policy are not covered or are excluded. Determination of this issue is coextensive with a determination of whether property damage and an occurrence have been demonstrated.

Although the plaintiffs' complaints claim damages in somewhat vague and generalized terms, there is sufficient indication, within the language of the complaints, to give rise to a duty to investigate and defend.

The foregoing excerpts are consistent with the filing made by the counsel for the insured involving the review notes he had taken. Conversely, there is, in the file, an affidavit, previously quoted in more detail herein, which had been submitted in opposition to a motion for summary judgment filed by First Wyoming Bank, by the president of Idaho Intermountain Claims who stated his position as chief adjustor regarding the *Robinson/Russell* litigation. In the affidavit, which was filed April 7, 1988 and duly acknowledged by the attorney from Idaho who had been a participant in most of these events and the source of a considerable amount of correspondence, there is stated by Mr. Weeks:

3. I have always taken the position that there was no coverage under the Policy of Insurance No. CPT900356 issued by Continental Insurance Company to First Wyoming Bank for the Complaint and Allegations filed by Lewis S. Robinson, et al. and Robert Russell, et al. against First Wyoming Bank and First Wyoming Bancorporation.

In the *in camera* file, under date of June 2, 1987, a letter from Mr. Weeks to his supervisor in the office on the West Coast, among other things, stated:

I have discussed this situation with Doug Balfour and there is a possibility that there are some things in our file that I do not think it would be in our best interests to have in the possession of Attorney Stanfield. I am quite sure that among other things he is going to claim bad

faith on the time element in responding to the demand for paying attorney fees, and various other aspects of coverage. Under these circumstances I am, as of the date of writing this letter, referring my entire file to Attorney Doug Balfour so that it will not be in my possession in the event I am subpoenaed for a deposition.

The entire file is rife with written comments contradicting the validity of the affidavit including a further letter dated March 18, 1987 by the affiant to his supervisor in Sacramento, California in discussing a coverage analysis provided to him:

As per our conversation, the analysis goes deeply into the local law on the possible application of coverage under contractual coverage. I think that this is very 'comprehensive and the bottom line would be, it appears to us that a defense would probably be the obligation of Continental under these circumstances. The question that you raised would be whether we would owe the entire defense because there are many aspects of this defense, R.I.C.O. and punitive damages that might well not be covered under the policy * * *.

Upon this third remand, issues of discovery and admissibility of the *in camera* documentation should be resolved by the district court. It is to be recognized that discovery inspection is as far as any usage claim of the *in camera* material has ever reached. Admissibility, at trial, provides different concepts and questions. This may be particularly true when the difference is recognized between the attention directed to the pleading file and the policy provision examination for coverage decision when compared to the bad faith counterclaim issues alleging refusal to defend.[10]

---

10. Although the discovery issue was not presented for our appellate review, by virtue of the district court's severance of the counterclaim from the declaratory judgment requested by Continental, significant briefing had been pursued in district court and the context of applicable cases continues in active national litigation. The discovery review provides the differentiated subject of privilege and work product. *Admiral Ins. Co. v. United States Dist. Court for Dist. of Arizona,* 881 F.2d 1486 (9th Cir.1989); *Auto*

*Owners Ins. Co. v. Totaltape, Inc.,* 135 F.R.D. 199 (M.D.Fla.1990); *Central National Ins. Co. of Omaha v. Medical Protective Co. of Fort Wayne, Indiana,* 107 F.R.D. 393 (E.D.Mo.1985); *Baker v. CNA Ins. Co.,* 123 F.R.D. 322 (D.Mont.1988); *Tackett v. State Farm Fire and Cas.,* 558 A.2d 1098 (Del.Super.1988); *State ex rel. United States Fidelity and Guar. Co. v. Montana Second Judicial Dist. Court,* 240 Mont. 5, 783 P.2d 911 (1989). See also an excellent review of work

## XI. BAD FAITH COUNTERCLAIM: AN UNTESTED ISSUE

This case, in reality, does tend to present the classical dilemma. The insurance company wants to avoid judicial consideration of bad faith in order to avoid exposure of documentation which relates directly to coverage concepts. The approach presently demonstrable in presentation to the last district court judge was to argue there was no coverage in order to avoid exposure of bad faith issues which related to existence of coverage. Obviously, with this reversal and remand, the issues of the counterclaim, contending insurer bad faith, remain pending to be determined in conjunction with assessment of policy coverage computation to reimburse the insured for expenses necessarily and properly incurred in the federal court litigation. Overtly, issues of fact are found regarding bad faith denial of any duty to defend under the entirety of the circumstances presented by this record. Those issues should be resolved by trial.

product in two Texas cases, *Washington v. State,* 822 S.W.2d 110, 116 (Tex.App.1991) and *Owens–Corning Fiberglas Corp. v. Caldwell,* 818 S.W.2d 749 (Tex.1991).

Intermixed in the cases presented to the district court are cases which are more recently published involving the decision never made by the district court which include a potential difference between first-party and third-party bad faith concepts. *Catino v. Travelers Ins. Co., Inc.,* 136 F.R.D. 534 (D.Mass.1991); *United Services Auto. Ass'n v. Werley,* 526 P.2d 28 (Alaska 1974); *Marrow v. State Farm Ins. Co.,* 264 Ark. 227, 570 S.W.2d 607 (1978). *See also* John J. Manier, Comment, *The Attorney–Client Privilege and Its Availability to Insured Persons,* 36 UCLA L.Rev. 977 (1989).

Also involved in conceptualized concepts is belated discovery with severed issues. *Compare Handley v. Farm Bureau Mut. Ins. Co.,* 467 N.W.2d 247, 249 (Iowa 1991) *with Corrente v. Fitchburg Mut. Fire Ins. Co.,* 557 A.2d 859 (R.I. 1989) and *Bartlett v. John Hancock Mut. Life Ins. Co.,* 538 A.2d 997 (R.I.1988). *See also Silva v. Fire Ins. Exchange,* 112 F.R.D. 699 (D.Mont. 1986) and *In re Bergeson,* 112 F.R.D. 692 (D.Mont.1986).

One of the critical determinates in first-party cases is the date when the privilege-work product preclusion of discovery commences, e.g., date of accident or insured coverage issue creating event, when claim denial is made, or finally, whenever suit is filed by the insurer or against the insurer. *Dunn v. State Farm Fire & Cas. Co.,* 927 F.2d 869 (5th Cir.1991); *Catino,* 136 F.R.D.

## XII. CONCLUSION

We reject the district court's conclusion, as unsupported by the record, that negligence was not a significant issue in the federal court litigation. We also do not conclude that the district court was justified in delaying the direction required in the remand order regarding a determination of privilege on the basis that either privilege could wait until the counterclaim was litigated or that privilege itself, under the circumstances of the record presented, could not directly be addressed regarding relevancy as to the duty to defend. This court never held that the initial district court judge was substantively in error in regard to a decision on privilege or the sanction imposed for Continental's untimely discovery response. This court consistently determined that a hearing was required and, on that basis, should be held and the sanctions which were granted were inappropriate at the stage the litigation had reached in 1987.[11] Unfortunately, that

534; *Werley,* 526 P.2d 28; *Jackson v. Downey,* 817 S.W.2d 858 (Tex.App.1991); *Escalante v. Sentry Ins.,* 49 Wash.App. 375, 743 P.2d 832 (1987). Compare the statutes of limitation concept in *Lawyers Title Ins. Corp. v. United States Fidelity & Guar. Co.,* 122 F.R.D. 567 (N.D.Cal. 1988); *Atlanta Coca–Cola Bottling Co. v. Transamerica Ins. Co.,* 61 F.R.D. 120 (N.D.Ga.1973); *Brown v. Superior Court In and For Maricopa County,* 137 Ariz. 327, 670 P.2d 725 (1983); *Tackett,* 558 A.2d 1098; *Montana Second Judicial Dist. Court,* 783 P.2d 911; and Robert R. Johnson, Note, *Limitations on a First–Party Breach of Good Faith and Fair Dealing Action Accrues at Denial of Claim,* 33 S.Tex.L.Rev. 329 (1992). Applying the sweep of times reflected to start a claim of privilege, we are moved in review from normal business operations into activities in anticipation of litigation that could vary here from institution of the federal court litigation in 1986, adjustor service employment of counsel sometime in February of 1987, denial letter of April 27, 1987, or final institution of this declaratory judgment by the insurance company on May 8, 1987.

Additionally, the requirement for *in camera* review before a final decision cannot be ignored. *Fireman's Fund Ins. Co. v. Superior Court,* 233 Cal.App.3d 1138, 286 Cal.Rptr. 50 (1991). *See also Montana Second Judicial Dist. Court,* 783 P.2d 911.

**11.** There is a dark side to this record, when examined with all of the facts on the table,

hearing has still not been held and we reverse this present summary judgment for the case to move forward to a trial conclusion.

Reversed and remanded for further proceedings in conformity herewith.

BROWN, J. (Retired), concurs in the result.

CARDINE, J., files an opinion concurring in part and dissenting in part.

THOMAS, J., files an opinion dissenting.

CARDINE, Justice, concurring in part and dissenting in part.

I concur in the opinion insofar as it affirms the summary judgment of the district court holding no coverage and, therefore, no duty to defend appellant's claim under the contractual liability, incidental contract coverage. I dissent from that part of the opinion holding there was a duty to defend based upon the conclusory allegations in the complaint which, in essence, state that (a) the bank was *negligent* in making a loan commitment (an offer accepted which resulted in a contract), and (b) negligent in failing to do as agreed (breach of contract). *Cf. Tate v. Mountain States Tel. and Tel. Co.*, 647 P.2d 58, 63 (Wyo.1982) (setting forth circumstances under which relationship created by contract gives rise to duty in tort); *Cf. also McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 856-60 (Wyo. 1990); *Cline v. Sawyer*, 600 P.2d 725, 732 (Wyo.1979); *Brubaker v. Glenrock Lodge Int'l Order of Odd Fellows*, 526 P.2d 52, 58-59 (Wyo.1974).

An action upon a contract does not become an action also in tort simply by use of the word negligence in a pleading. If that were so, every contract action would also be a tort action. What is clearly required and stated in law is that *facts* must be alleged which state a claim in tort. *See MacKrell v. Bell H₂S Safety*, 795 P.2d 776, 779 (Wyo.1990) (plaintiff's bald statement

that a party is negligent is insufficient to create a genuine issue of material fact). Such facts are not yet alleged in appellant's complaint. Appellant, however, has so far been denied significant discovery which might disclose facts sufficient to state a claim in tort. *See Home Ins. Co. v. Elston Equip. Co.*, 810 P.2d 992, 995 (Wyo.1991) (summary judgment for defendant in products liability case reversed where plaintiff's expert unable to examine allegedly defective heater hose). I, therefore, concur in the remand to conclude the *in camera* examination and resolve questions concerning privilege and appropriate disclosure of documents.

Finally, I strenuously object to this court's disclosure of the contents of documents which we ordered not be disclosed by appellant's counsel and which are still the subject of discovery proceedings. Parenthetically, I note that these documents have nothing to do with the determination of the duty-to-defend question, but only would be relevant to a bad-faith claim if such duty were first found to exist.

THOMAS, Justice, dissenting.

I must dissent from the majority disposition in this case. I agree with the majority in affirming the summary judgment that there was no policy coverage in this case and, for that reason, a duty to defend any claim under the policy provisions relating to contractual liability and incidental contract coverage. I am like Justice Cardine in dissenting from that part of the opinion which holds that there was a duty to defend based upon the conclusional allegations in the complaint filed against the bank in federal court. I would affirm the summary judgment in toto, however.

It is clear to me that, when the relationship of parties to an action is founded in a business context, and they have made contracts concerning their obligations to one another, those contractual responsibilities

which is deeply disturbing where the insurance carrier has one view regarding coverage in-house and communicates a totally different perspective to its insured and then creates court filings in district court which misstate both. As

a court record affidavit filing provided then in support of summary judgment, we trust that these events are to be confined within these facts for only this case and not subject to repetitive reoccurrence.

ought to be resolved as contractual matters. I shall always perceive it a mistake to create a tort claim as an overlay to a breach of contract. That has the effect only of confusing two very separate areas of the law. Consequently, when the claimants against the bank submitted simply a conclusional statement that the facts, which they had recited as demonstrating contractual breaches, arose out of negligence, I am satisfied that they did not, in their complaint, state a cause of action for negligence which would require a defense by the insurance company. In my view, the district court was entirely correct in granting the summary judgment as a matter of law.

I must depart from that aspect of Justice Cardine's opinion where he agrees the case should be remanded for discovery to determine if there is an independent tort claim of bad faith. I adhere to the views I set forth in a dissenting opinion to *McCullough v. Golden Rule Insurance Co.*, 789 P.2d 855 (Wyo.1990). This case simply exemplifies how we are stuck to the "Tar–Baby" and have not yet found a briar patch in which we can extricate ourselves from these situations.

I would affirm the summary judgment.