AETNA CASUALTY AND SURETY COMPANY *vs.* ALICE COTTER, administratrix, & others.[1]

No. 87-506.

Essex. March 15, 1988. — May 18, 1988.

Present: DREBEN, CUTTER, & KASS, JJ.

*Insurance,* Homeowner's insurance, Insurer's obligation to defend, Construction of policy, Coverage. *Contract,* Insurance. *Practice, Civil,* Complaint.

In a civil action brought by a person injured while attempting to cut down a tree, seeking damages from the homeowner on whose premises the tree was located, where the complaint alleged no theory of negligence, but, instead, alleged claims for misrepresentation and breach of contract resting on the homeowner's representations that he carried $100,000 of insurance which would compensate one who might be injured while removing the tree, this court concluded that the injured person's allegations came within the provision of the homeowner's policy of insurance expressly excluding from personal liability coverage for bodily injury or property damage any "liability assumed under any unwritten contract or agreement"; furthermore, the allegations were insufficient to invoke the insurer's duty to defend the action. [58-60]

CIVIL ACTION commenced in the Superior Court Department on June 3, 1986.

The case was heard by *John P. Forte,* J., sitting under statutory authority.

*Michael P. Martel* for Thomas J. Keefe & another.

*David Oliver Brink* for the plaintiff.

*Nelson C. Chang,* for Alice Cotter, administratrix, submitted a brief.

KASS, J. Underlying this action is a fall from a tree in which Alfred Cotter, by his own description, "got all smashed to hell." That mishap occurred on premises owned by Cotter's

---

[1] Thomas J. Keefe and Anna M. Keefe.

sister and brother-in-law, Anna and Thomas Keefe, who had purchased a homeowner's insurance policy from Aetna Casualty & Surety Company (Aetna). Aetna disclaims coverage for damages claimed by Cotter[2] against the Keefes and brought this action under G. L. c. 231A for a judgment declaring that the Cotter claim is not within the scope of the policy and declaring, as well, that Aetna has no obligation to defend the Keefes against Cotter's claim.

What raises the question of coverage is that Cotter's claim is based not on some condition of the premises or act of the insured which caused his injuries, but rather on representations of Thomas Keefe that he carried $100,000 of insurance which was certain to compensate Cotter were he to get hurt while cutting down a tree in the Keefes' yard. Upon allowance of Aetna's motion for summary judgment, a judgment entered in favor of Aetna.

These are the uncontroverted material facts: At Thomas Keefe's importuning, Cotter on February 9, 1980, undertook to cut down a hickory tree on the Keefe property. Cotter was an experienced hand with a ladder and a chain saw. Nonetheless, while limbing the tree, Cotter fell out and suffered serious injuries to his back, chest, and lungs. He was hospitalized for several months and amassed medical bills in excess of $70,000.

Many times Thomas Keefe had bragged to Cotter and others that the Keefes had $100,000 of insurance which would pay for the consequences of any accident on their property. Were Cotter to be injured while cutting down the Keefes' tree, Thomas Keefe is alleged to have said, his medical bills would be paid; he would "be fully taken care of and would be provided for."[3] In the event, Aetna declined to honor Cotter's medical bills. When Cotter then brought suit against the Keefes, Aetna defended under a reservation of rights and brought this declaratory action to ascertain its obligations. In this respect it acted

---

[2] Alfred Cotter died in October, 1985, and Alice, his wife and the administratrix of his estate, maintains the claim.

[3] The quotation is from the complaint filed by Cotter against the Keefes.

conformably with *Sterilite* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 323-324 (1983).

An insurer's obligation to defend against a claim is determined by the allegations in the complaint. *Lusalon, Inc.* v. *Hartford Acc. & Indem. Co.*, 400 Mass. 767, 772 (1987). See also *Vappi & Co.* v. *Aetna Cas. & Sur. Co.*, 348 Mass. 427, 430 (1965); *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 166 (1983). If the allegations "are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146 (1984). *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. at 318. *Crane Serv. & Equip. Corp.* v. *United States Fid. & Guar. Co.*, 22 Mass. App. Ct. 666, 669 (1986). Deciding whether there is a duty to defend requires "envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. at 318. *Crane Serv. & Equip. Corp.* v. *United States Fid. & Guar. Co.*, 22 Mass. App. Ct. at 669.

The allegations set forth in Cotter's complaint are peculiarly expressed so as not to fit within the coverage of Aetna's policy. Cotter's complaint is in two counts: one for misrepresentation, i.e., misleading Cotter into attempting the tree-cutting job on the basis that he would be compensated by insurance for any hurt; the other, breach of contract, i.e., failure to provide the promised strict liability coverage.

Personal liability coverage under the policy[4] is for bodily injury or property damage for which the insured is "legally obligated" (the 1971 text) or "legally liable" (the 1975 text).

---

[4] There are two forms of a so-called "HO-3" policy issued by Aetna. One is dated September, 1971, and that is the policy submitted by the Keefes as actually received from Aetna. A second is dated December, 1975, and is in the "plain English" style. The parties stipulated that differences in text of the two forms were not dispositive of their controversy. The text dates of the policy forms are unrelated to the dates on which policies written on those forms were effective.

There is expressly excluded from personal liability coverage any "liability assumed under any unwritten contract or agreement" (the 1975 text).[5] What the exclusion means is that the insured may not unilaterally expand the coverage of the policy by contractually subjecting himself to a liability that would not exist, but for agreement. Keefe could not by his misrepresentations bind the insurer to a strict liability standard unless the policy text so provided. The "liability assumed" exclusion clause has been taken to refer to "liability incurred when one promises to indemnify or hold harmless another." *Wolov* v. *Michaud Bus Lines, Inc.*, 21 Mass. App. Ct. 60, 63 n.7 (1985). *Olympic, Inc.* v. *Providence Wash. Ins. Co.*, 648 P.2d 1008, 1011 (Alaska 1982).

The wrongs to which the policy language extends are those which cause bodily injury or property damage. Although one may imagine a misrepresentation, for example concerning the wholesomeness of a food or strength of a tree limb, which would cause bodily injury, generally a misrepresentation is an incorporeal tort, like defamation, which does not cause bodily injury or property damage independent of conditions or acts which themselves are the consequence of negligence. See *Allstate Ins. Co.* v. *Diamant*, 401 Mass. 654, 656-658 (1988). Certainly, in the case before us, the misrepresentation asserted, the extent of insurance coverage, did not produce a bodily injury or property damage. The personal liability coverage of the policy is, therefore, not applicable. Cf. *McCollum* v. *Insurance Co. of N. America*, 132 Ariz. 129, 132 (1982) (third parties' loss of profits as a result of insured's negligent representations is not covered under a general liability policy providing coverage for all sums which insured became legally obligated to pay as a result of injuries caused by an occurrence); *Haley* v. *Georgia Farm Bureau Mut. Ins. Co.*, 166 Ga. App. 596, 599 (1983) (insurer has no duty to defend suit when such action is predicated upon intentional misrepresentations by its insured); *Dixon* v. *National Am. Ins. Co.*, 411 N.W.2d 32, 33-34

---

[5] The analogous provision in the 1971 text provides that the policy does not apply "to liability assumed by the insured under any contract or agreement not in writing . . . ."

(Minn. App. 1987) (insurer has no duty to defend claim that its insured misrepresented location and adequacy of septic system). Count I of the complaint hits no target in the policy.

Count II, the contract claim, fails because the very promise alleged by Cotter is one to which the defendants, under the exclusion of assumed liability, could not bind the insurer. Insurance policy exclusions are to be strictly construed so as not to diminish the protection purchased by the insured. *Vappi & Co.* v. *Aetna Cas. & Sur. Co.*, 348 Mass. at 432. *King* v. *Prudential Ins. Co.*, 359 Mass. 46, 53 (1971). Here the exclusion fit squarely.

On the complaint as pleaded there was neither coverage nor a duty to defend.[6] Summary judgment was rightly allowed.

*Judgment affirmed.*

---

[6]The homeowner's policy does, under Coverage F, appear to provide indemnity on a strict liability basis, for medical expenses incurred within a stated time period, on account of injuries sustained by a person on the insured premises with the permission of the insured. The policy limits in this case, however, were $500 per person per accident.

The case might stand differently if Cotter had been able to allege negligence on the part of Thomas Keefe in maintaining his premises or in failing to warn Cotter about an unsafe condition of the tree. We intend no intimation that a factual predicate existed for such an allegation.