Cratsley, J.
The parties have filed cross motions for summary judgment on the issue of whether the insurers Hartford Accident & Indemnity Company (Hartford), Liberty Mutual Insurance Co. (Liberty Mutual), and CNA Insurance Companies (CNA) had a duly to defend claims brought against SCA Disposal Services of New England, Inc. (SCANE) by Grassy Knoll Associates (GKA). The insurers declined to defend SCANE, and SCANE proceeded with its own defense. SCANE now seeks judgment for the $258,536.37 in attorneys fees which it paid for the defense. The insurers oppose SCANE’s motion and they have moved for summary judgment, claiming that the GKA complaint stated no claim which was covered under their policies and, therefore, they had no duty to defend or indemnify SCANE.
In the underlying action GKA sought to hold SCANE responsible for $10 million in damages on account of property damage at the Auburn Road Landfill which the EPA had assessed against GKA. GKA had acquired the Auburn Road Landfill in June 1979. GKA and SCANE entered into a lease of the premises on July 10, 1979. GKA asserted two bases for its claim against SCANE: (1) the “indemnification and hold harmless” provision of the lease; and (2) their reliance on SCANE’s misrepresentations concerning the presence of hazardous waste on the site and concerning its ability to obtain operating permits and to obtain insurance for SCANE and GKA. This reliance says GKA led them to purchase the landfill and incur liability for the hazardous waste on the site.
BACKGROUND
GKA purchased the Auburn Road Landfill in Lon-donderry, New Hampshire on June 1, 1979. On July 10, 1979, Derry Sand and Gravel, which was wholly owned by GKA, leased the site to SCANE to be used as *45 a landfill. The lease was contingent upon the parties obtaining all permits necessary to operate a landfill. SCANE was unable to obtain permission of the Board of Selectmen of Londonderry or the State of New Hampshire for operation of the landfill. In October 1979, GKA received notice that hazardous waste had been dumped at the site. SCANE never operated the site. The Auburn Road Landfill closed in January 1980.
In August 1984 GKA and Derry Sand and Gravel brought a declaratory judgment action for rescission of the lease and an action for damages for the costs of acquiring the site and for lost profits against SCANE. These actions were begun in New Hampshire’s state courts and were subsequently transferred to federal court (GKA I). In October 1986 GKA sought to amend its complaint to add a claim against SCANE for property damage at the landfill. This claim arose in connection with the EPA investigations into hazardous waste at the landfill. Because the claim was untimely, the motion was denied. After a jury trial a verdict was returned for GKA for breach of the lease agreement, and GKA was awarded damages. On March 31, 1987 the parties reached a settlement rescinding the lease and awarding GKA money damages for lost profits and for engineering and legal fees.
In February 1987 GKA and Peter Johnson received an EPA order naming them respondents in an action concerning hazardous waste at the Auburn Road Landfill. Johnson and GKA sent demand letters to SCANE and its parent Waste Management of North America (WMNA). WMNA had acquired SCANE when it purchased all the stock of SCANE from SCA Disposal Services, Inc. in 1984.[3] WMNA and SCANE sent copies of the demand letter to Liberty Mutual, CNA, and Hartford, demanding defense and indemnification by these insurers. The insurers either denied coverage or failed to respond.
In August 1988 Johnson and GKA filed a second civil action Peter Johnson and Grassy Knoll Associates v. SCANE and WMNA, No. 88-328-D (GKA II). In this action (GKA II) plaintiffs alleged claims similar to those of their untimely motion in 1986 in the GKA I action. They added WMNA as a defendant. They claimed to have sustained $10 million in property damage as the result of SCANE’s negligent inspection for hazardous waste prior to GKA’s purchase of the property. In August 1988 SCANE and WMNA notified the defendant insurers of this complaint, demanding defense and indemnification. Liberiy, CNA, and Hartford either denied or failed to provide defense and indemnification. On May 7, 1990 the United States District Court for the District of New Hampshire dismissed GKA’s claims against SCANE and WMNA in the GKA II action, holding that the claims were barred by the doctrine of resjudicata On May 2, 1991, the First Circuit Court of Appeals in Johnson v. SCANE, 931 F.2d 970 (1991), affirmed the decision of the District Court.
DISCUSSION
Summaiy judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that it is entitled to summary judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). With respect to any claim on which the party moving for summaiy judgment does not have the burden of proof at trial, the party can demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). If the moving party demonstrates that there is no triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, supra at 17.
The first question in this case is whether the insurers have a duty to defend SCANE under the Incidental Contract provisions of their policies. “The initial duty of the liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the third-party complaint are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.” Liberty Mutual Ins. Co. v. SCA Services, Inc., 412 Mass. 330, 331-32 (1992), citing Continental Casualty Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146-47 (1984), quoting Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983). Because the insurers’ liability under the Incidental Contract coverage is limited to the liability assumed by the insured under the incidental contract, determination of whether the insurers owe SCA a duty to defend the GKA claim is decided by matching the complaint to the policy provisions and to the terms and conditions of the indemnity clause of the GKA-SCANE lease.
The Liberty Mutual and Hartford insurance policies are Comprehensive General Liability (CGL) policies, which provide coverage for liability incurred by the insured for damages on account of property damage caused to the property of third parties by an occurrence during the policy period. The Liberty Mutual Policy, LG1-612-004135-029, which was in effect from January 1, 1979 to January 1, 1980; the CNA policy, No. 005 31 26 10, for the period January 1, 1979 to January 1, 1980; and extended by endorsement to January 1, 1983; and the Hartford policies 10 CLR *46 C30100E for the period January 1, 1983 to January 1, 1985, and 10 CLR C30114E contain the following exclusion:
This policy does not apply to liability assumed by the insured under any contract or agreement except an incidental contract.
Memorandum of Liberty Mutual Ins. Co. in Support of its Motion for Summary Judgment, Ex. A.; Affidavit of David Nern in Support of the Motion for Summary Judgment of CNA Insurance Companies with Regard to the SCANE Claims, Ex. A; Affidavit of Gregory Deschenes in Support of Defendant Hartford Accident & Indemnity Company’s Motion for Summary Judgment, Exhibits B and C.
Paragraph XIV of the GKA-SCANE lease contains the indemnification agreement which reads as follows:
The Lessee does hereby indemnify the Lessor and saves the Lessor harmless from and against any and all claims, actions, damages, liabilities and expenses in connection with the loss or damage to property, or injury or death to persons occurring during the original term, modified ten (10) year term, or any extension thereof, which shall have occurred on the leased premises, or which arose directly or indirectly out of the construction of improvements thereon, or the operation of the Lessee’s business thereon, which were occasioned by any act, whether omission or commission, of the Lessee or its officers, agents, servants, contractors, customers, invitees or employees.
Reply by SCA Disposal Services of New England, Inc. to Hartford Accident & Indemnity Company’s opposition to Motion for Summary Judgment on the GKA Claims, Ex. A, par. XTV.
The indemnification provisions of the GKA-SCANE lease make clear that SCANE agreed to indemnify GKA only for claims in connection with loss or damage to property which were also occasioned by an act of the Lessee or its agents, servants, contractors or invitees.
In order to create a duty to defend, the GKA complaint must allege that SCANE committed some act which caused property damage. The GKA complaint alleges that SCANE failed to inspect the property and to advise GKA of its condition and that SCANE breached the lease by failing to obtain both insurance coverage and operating permits for GKA, and by failing to remove hazardous substances from the property. There are no allegations that any act of SCANE, whether omission or commission, caused property damage. In fact, SCANE has admitted that “there are no allegations in the Grassy Knoll Complaint that SCANE was responsible for the transport of hazardous substances to the site.” Memorandum of SCANE in Support of its Motion for Summary Judgment on the Insurer’s Duty to Defend Against Defendants CNA/Transportation Company and the Hartford Accident & Indemnity Company, p. 19. In support of its motion for summary judgment in the GKA II action, SCANE argued that GKA had no contractual entitlement of indemnity because the explicit language of the indemnity agreement covers only damage that arose from the operation of the Lessee’s business on the site and there is no evidence that SCANE dumped hazardous waste at the site.[4] Memorandum in Support of SCANE’s Motion for Summary Judgment in Peter Johnson and Grassy Knoll Assoc. v. SCA Disposal Services of New England and Waste Management of North America, Inc. (GKA II), and Ex. 1 attached to Memorandum of Hartford Accident & Indemnity Co. in Opposition to Plaintiffs Motion for Summary Judgment. Comparison of the GKA complaint with the insurers’ policies and with the indemnity agreement of the Lease reveals that the complaint does not state a claim under the Incidental Contract provisions of the policy.
The second question is whether, as SCANE argues, the insurers have a duty to defend SCANE based on GKA’s allegations that SCANE’s breach of contract, negligence, and misrepresentation caused GKA to buy the landfill and incur liability for the property damage thereon. The Hartford, Liberty Mutual, and CNA Comprehensive General Liability policies extend coverage for the insured’s liability for damages on account of property damage caused by an occurrence. An occurrence is “an accident . . . which results during the policy period in property damage .. . neither expected nor intended from the standpoint of the insured.”
Losses caused by the insured’s alleged negligent misrepresentations or breach of lease are not “damages because of . . . property damage caused by an occurrence” covered by a liability policy. Aetna Casualty & Surety Co. v. Cotter, 26 Mass.App.Ct. 56, 59 (1988) (liability insurance covers only those wrongs which cause bodily injury or property damage). See, Safeco Ins. Co. of America v. Andrews, 915 F.2d 500 (9th Cir. 1990); American States Ins. Co. v. Canyon Creek, 786 F.Supp. 821, 825 (D.C. Cal. 1991); Borg-Warner Corp. v. Insurance Company of North America, 577 N.Y.S.2d 953 (1992) (contract damages arising out of conditions of property are not covered in CGL policy).
In Cotter the plaintiff, who was injured while cutting down a tree on the insured’s property, brought an action against the insured for insured’s breach of contract and misrepresentation that he had insurance to cover plaintiff for such an injury. The court in Cotter held that there is no coverage for misrepresentations which do not cause bodily injury or property damage “independent of conditions or acts which are themselves the consequence of negligence.” Id.
In this case, as in Cotter, there is no causal connection between SCANE’s alleged misrepresentations to GKA and the property damage at the site. Because the GKA complaint does not state a claim for damages on account of property damage caused by an occurrence, *47 the insurers are entitled to summary judgment on the issue of their duty to defend SCANE against the GKA claims for misrepresentation and breach of contract.[5]
The fate of the remaining counts of plaintiffs Amended Complaint which apply to the GKA action depends on the decision on the insurer’s duty to defend the plaintiffs. In Count V of the Amended Complaint the plaintiffs allege that when the insurers refused to defend SCANE in the GKA II action and when they denied coverage to SCANE they breached the insurance contracts. This count is resolved by this Court’s decision that the insurers are entitled to summary judgment on the duty to defend since the allegations of the GKA II complaint do not state a claim covered by the policy.
Because the First Circuit upheld U.S. District Court’s dismissal of GKA’s claim that SCANE owed $10,000,000 in damages, the insurers are entitled to summary judgment on Count IV, the duty to indemnify SCANE for that claim. Since they had no duty to defend SCANE or to indemnify SCANE, the insurers are entitled to summary judgment on Count V for breach of insurance contract.
Plaintiffs’ claim for breach of the implied covenant of good faith and fair dealing could succeed if the insurers wrongfully breached the insurance contract in refusing coverage for the insured’s claims. Because the insurers were not under a duty to provide coverage to SCANE and thus did not breach the insurance contract, it follows that they did not breach the implied covenant of good faith and fair dealing. See Travelers Indemnity Co. v. Allied-Signal, Inc., 718 F.2d 1252, 1256 (D.Md. 1989); Seaman’s Direct Buying Service, Inc. v. Standard Oil Co., 686 P.2d 1158 (1984). Therefore, the insurers are entitled to summary judgment on Count VII for breach of the implied covenant of good faith and fair dealing.
Plaintiffs have also alleged in Count VI that the insurers committed unfair insurance practices in violation of Massachusetts General Laws c. 176D and 93A and in violation of New Hampshire Revised Statutes Annotated, c. 358-A. Two recent decisions, similarly holding that there is no obligation upon an insurer to defend in landfill pollution situations, summarily dispatch with these types of claims. In Landover, Inc. v. Liberty Mutual Insurance Co., 36 Mass.App.Ct. 177, the 176D and 93A claims are rejected in footnote 5 on page 179. Judge O’Toole of this Court reaches the same conclusion in one sentence in Roche Brothers Barrel and Drum, Inc. v. Employers Fire Insurance Co. (Middlesex, No. 91-6120, January 1994) at page 11.
In rejecting Count VI it may be added that there is no independent right of action under G.L.c. 176D. Mahoney v. John Hancock Mutual Life Ins. Co., 6 Mass.App.Ct. 919, 921 (1978). Neither is Chapter 176D incorporated into G.L.c. 93A, s. 11. Boston Symphony Orchestra v. Redgrave, 406 Mass. 7, 14 n. 5 (1989); Jet Line Services, Inc v. American Employers Ins. Co., 404 Mass. 707, 717 n. 11 (1989); Transamerica Ins. Group v. Turner Construction Co., 33 Mass.App.Ct. 446, 451-52 (1992).
If at the time of its decision, “an insurer could reasonably have concluded that no aspect of the [insured’s] claims was within the scope of coverage and that, therefore, there was no duty to defend [the insured] ... an insurer’s refusal to defend, even if ultimately determined to be wrong, does not support a claim under G.L.c. 93A. Polaroid Corp. v. The Travelers Indemnity Corp., 414 Mass. 747, 754 (1993), citing Boston Symphony Orchestra v. Redgrave, supra at 14-15. In this case the insurers’ decisions that the GKA II complaint failed to allege claims falling within the coverage of their policies had a reasonable basis, and thus there is no basis for a 93A claim. The insurers are entitled to summary judgment on Count VI of the Amended Complaint for unfair insurance practices in violation of Massachusetts General Laws c. 176D and 93A and of New Hampshire Revised Statutes Annotated, c. 358-A.
Plaintiffs also claim that insurers breached their fiduciary duties to SCANE by refusing to defend SCANE against the GKA II claims and by their improper handling of the claims. An insurance company has a fiduciary duty to its insured only after the company exercises its right to control claims within the insured’s policy. SCA Disposal Services of New England, Inc. v. Central National Insurance Co. of Omaha, Suffolk Superior Court No. 90-0393, decided December 5, 1990, citing Fireman’s Fund Ins Co. v. Continental Ins. Co., 519 A.2d 202, 204 (Md. 1987). The fiduciary duly governs the relationship between insurer and insured under the insurance contract. It does not govern the insurer’s interpretation of that contract. Id. citing Couch on Insurance 2d (Rev. ed.) s. 23:11. The fiduciary duty does not govern the insurers’ interpretations of the insurance contracts to determine when to undertake their defense duties. The insurers are entitled to summary judgment on Count VIII for breach of fiduciary duty.
The final question before this Court is whether insurers in the GKA claim afforded coverage to WMNA, the corporation succeeding SCA Services Corporation as parent and sole stockholder of SCANE.
Plaintiffs suggest that principles applying to merged companies transfer by operation of law the insurance policies covering SCA Services and SCANE to WMNA and WMNH. In cases where the acquired company has lost its separate corporate identity and has been merged into the acquiring company according to the terms of a state’s merger statute, courts have held that the rights under the insurance policy of the merged company are deemed to have been transferred and vested in the surviving corporation, even if the policy contained a no-assignment clause. Imperial Enterprises, Inc. v. Fireman’s Fund Ins., 535 F.2d 287, *48 291 (1976); National American Ins. Co. v. Jamison Agency, Inc., 501 F.2d 1125, 1128-29 (1974). Courts have justified overriding the no-assignment clause of the policy because such a transfer does not increase the risk to the insurer when the coverage transferred is limited to pre-acquisition occurrences. Id.
Two factors distinguish this case from those just discussed. First, WMNA acquired SCANE (formerly SWDNH) by stock purchase, not by statutory merger. Second, SCANE/SWDNH retained its separate corporate identity after the purchase. When acquisition is accomplished by stock purchase, all legal attributes of the acquired entity continue. Leases, contracts, and licenses remain with the acquired entity, although a particular contract may provide for termination with the change of control. Simon Lome, Acquisitions and Mergers Negotiated and Contested Transactions §2.2(3] (1985). For these reasons WMNA is not entitled to a transfer of SWDNH/SCANE’s insurance by operation of law.
Because the policy remains with SWDNH/SCANE, the terms of the Liberty, Hartford and CNA policies will govern what entities are covered. Endorsement 1 in CNA policy CCP005-31-26-10 for the period January 1, 1980 to January 1, 1981 lists SCA Services, Inc. in Item 1 of the Policy Declarations and includes all entities listed in Endorsement #1. WMNA is not listed in Endorsement #1. Endorsement 38, effective January 1, 19880, provides that,
the term named insured shall include any organization which is acquired or formed by the named insured after the effective date of this policy and over which the named insured maintains ownership or majority interest.
In addition, endorsement 38 provides that the new entity must be specifically endorsed as a named insured to retain coverage. The endorsement provides that coverage shall cease effective on the day the named insured ceases directly or indirectly to maintain a majority interest in such additional named insured. In 1981, CNA provided in endorsement 46, effective January 1, 19890, that CNA would cover SCA Services’ liability in connection with “entities of any nature of which SCA Services assumed active management or control.” Finally, in endorsement 50, effective January 1, 1982, CNA agreed to include among the named insured “any subsidiaries” of SCA Services, subsidiaries of subsidiaries and their “financially controlled or actively managed organizations .. . and any other organizations which they have agreed to insure.”
WMNA is not listed in endorsement 1 of the CNA policy, nor is it an entity in which SCA Services maintains a majority interest, or which SCA Services or one of its subsidiaries financially controls or actively manages. Therefore, WMNA is not covered by CNA policy CCP 005-31-26-10.
Only parts of the Hartford policies are attached to Deschenes Affidavit, Doc. 29. Therefore, the question of WMNA’s coverage under Hartford policies cannot be answered with precision, and the principle of law set forth herein regarding no transfer by operation of law prevails.
Endorsements 1, 11, and 16 of Liberty Mutual policy No. LG1-612-004135-029 list the named insureds in addition to SCA Services. WMNA does not appear as a named insured in any of the lists. Accordingly, WMNA cannot assert a claim for defense under the Liberty Mutual and CNA policies. Standard Marine Ins. Co. v. Federal Ins. Co., 336 N.Y.S.2d 692, 695 (App.Div. 1st Dept. 1972) (policy which covered named insured and its wholly owned subsidiaries, affiliated and controlled entities, did not cover parent company which had acquired insured through stock purchase and which was neither a named insured nor an affiliated and controlled entity of an insured). Therefore, Liberty Mutual and CNA are entitled to summary judgment on the issue of their duty to defend and indemnify WMNA.
CONCLUSION
The insurers, Hartford, Liberty Mutual and CNA are entitled to summary judgment on Counts II (Duty to Defend), IV (Duty to Indemnify), V (Breach of Contract), VI (M.G.L.c. 93A, 176D and N.H. RSA c. 358-A), VII (Breach of Covenant of Good Faith), VIII (Breach of Fiduciary Duty) of the plaintiffs’ Amended Complaint.
ORDER
It is therefore ORDERED that the defendants’ motions for summary judgment as to Counts II, IV, V, VI, VII, and VIII are ALLOWED and that the motion of plaintiffs on Counts II, IV, V, VI, VII and VIII are DENIED.

 On May 2, 1980, SCA Disposal Services had purchased from Sanitas Waste Control Corporation all the stock of Sanitas Waste Disposal Systems of New Hampshire, Inc (SWDNH).

 This Court has discovered the following endorsement No. 22 in LG1-612-004135-029, effective January 1, 1979. “All persons or entitled for whom the insured has agreed to provide insurance, or for whom the insured is required to provide insurance under the terms of a lease . . . shall be covered as an additional insured hereunder.” Endorsement No. 27 of CNA policy CCP 005-31-26-10, with no effective date, also provides that “one for whom insured has agreed to provide insurance of for whom the insured is obligated to price insurance under a lease is covered as an additional named insured.” These endorsements raise the question of whether GKA would be insured simply as a PRP for hazardous waste damages at the landfill. Still, the right of a defense and indemnity would flow to GKA, not to plaintiff SCANE. Do these endorsements override provisions in the indemnity agreement of the lease? This Court thinks not. These endorsements are for agreements to provide insurance, not for agreements *49 to indemnify. Does it operate automatically? Again, this Court thinks not since one GKA claim is that SCANE neglected to provide insurance for GKA.

 In an earlier action, Johnson and GKA v. SCANE and WMNA, Inc., No. 90-1709, (1st Cir. May 2, 1991), GKA sought rescission of the lease on the Auburn Road Landfill and recovery for economic damages caused by its reliance on SCANE’s misrepresentations. GKA prevailed. However, SCANE did not seek coverage from its insurers for this lawsuit.